JUDGE LEISURE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BOARD OF MANAGERS OF THE
195 HUDSON STREET CONDOMINIUM,    **07 CIV 4058**

              *Plaintiff*,    :

                            **COMPLAINT**

   – against –                :

                            **JURY TRIAL DEMANDED**

JEFFREY M. BROWN ASSOCIATES, INC. and  :
LEXINGTON INSURANCE COMPANY,

                            :

             *Defendants*.
-----------------------------------------------------------X

RECEIVED
MAY 23 2007
U.S.D.C. S.D.N.Y.
CASHIERS

       Plaintiff Board of Managers of the 195 Hudson Street Condominium ("Plaintiff" or the "Board"), by its attorneys Judd Burstein, P.C., complaining of the Defendants, allege as follows:

### JURISDICTION AND VENUE

       1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that this is a civil action between citizens of different States, and the amount in controversy exceeds $75,000.

       2.     Venue lies in this District pursuant to 28 U.S.C. § 1391(a)(2).

### THE PARTIES

       3.     Plaintiff Board is the representative of the unit owners of the 195 Hudson Street Condominium. None of the unit owners are citizens of the States of Pennsylvania, Delaware or Massachusetts.

       4.     On information and belief, Defendant Jeffrey M. Brown Associates, Inc. ("JMB") is a corporation organized under the laws of the State of Pennsylvania and maintains its principal place of business in the State of Pennsylvania.

5. On information and belief, Defendant Lexington Insurance Company ("Lexington") is a corporation organized under the laws of the State of Delaware and maintains its principal place of business in the State of Massachusetts.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

6. The 195 Hudson Street Condominium is a residential loft building located at 195 Hudson Street in New York, New York. The building was previously used for industrial purposes, and was converted into a residential building pursuant to a condominium offering plan.

7. K&J Construction Co., L.P. ("K&J") served, pursuant to a written contract with the Condominium Sponsor, as the Construction Manager on the 195 Hudson Street conversion project.

8. On information and belief, (a) K&J was formed by JMB in 1998 for the purpose of performing non-union construction work in New York City; (b) K&J worked on only four projects, including the 195 Hudson Street conversion project; and (c) the work on all of those projects was commenced prior to June 25, 1999.

9. In 2003, the Board commenced litigation in the New York State Supreme Court (the "Litigation") against, *inter alia*, K&J, for a host of significant problems in the building. As against K&J, the Board alleged that it was a third party beneficiary of K&J's contract with the Sponsor and that K&J's defective construction work on the conversion project had breached that contract by, *inter alia*, failing to render professional services called for by the contract.

10. In April 2007, the Board settled its claims against the Sponsor, as well as the architect and the engineer who created the plans and specifications for the 195 Hudson Street

conversion project. As part of the Board's settlement with the Sponsor, the Sponsor assigned its breach of contract claims against K&J to the Board.

11. Also in April 2007, prior to commencement of the trial in the Litigation, the Court ruled that, as a matter of law, the Board was a third party beneficiary of K&J's contract with the Sponsor and, further, that, pursuant to a Liquidating Agreement entered into by the Board and the Sponsor, the Board stood in the shoes of the Sponsor with respect to the Sponsor's breach of contract claims against K&J.

12. On May 9, 2007, a jury returned a verdict in favor of the Board and against K&J on the Board's breach of contract claims against K&J, and awarded damages in the amount of $2,106,728.09. On the day of the verdict, the Court denied K&J's motions to overturn the verdict, but reserved judgment on $47,036.00 awarded by the jury in connection with K&J's failure to install a security and intercom system in the building.

13. On information and belief, by the time that issue has been joined in this case, a judgment will have been entered against K&J in the Litigation.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment Against Lexington)

14. The Board repeats and realleges Paragraphs 1 through 13 above as if fully set forth herein.

15. Schedule E to K&J's contract with the Sponsor required K&J to purchase insurance which extended to, *inter alia*, "Blanket Contractual Coverage (including coverage for the Indemnity Clauses provided under this Agreement) . . . ."

16. In or about June or July 2000, Lexington issued a "claims made" policy insuring JMB and K&J for, *inter alia*, any "Breach of Professional Duty in the rendering or failure to render of Professional Services." (A copy of the policy is annexed hereto as Exhibit A and incorporated by reference herein). "Professional Services" is defined by the policy to include "construction management services . . . for whom the Insured . . . performs for others for a fee."

17. The effective date of the policy is June 25, 2000, but the policy has a retroactive date of June 25, 1999 such that it covers those Professional Services commenced after June 25, 1999 which result in a Claim for a Breach of Professional Duty. Here, although K&J rendered some of its "Professional Services" prior to June 25, 1999, K&J commenced rendering or failing to render the actual Professional Services which resulted in the Claim under the policy after June 25, 1999. Moreover, since, as alleged above, some of K&J's work on each of its four projects predated June 25, 1999, the policy would be illusory as to K&J if it did not cover projects for which K&J provided services prior to June 25, 1999. For these reasons, *inter alia*, K&J's breach of its contract with the Sponsor was covered by the policy.

18. Even though it assumed the cost of K&J's defense in the case and sent a representative to attend the trial of the Litigation every day through the close of evidence, Lexington, through counsel for K&J, has expressly disclaimed coverage for K&J under the policy, although it has not yet formally explained the basis for that determination.

19. In contrast, the Board contends that the Lexington policy does cover the judgment it is about to receive on its claims against K&J.

20. A justiciable controversy has therefore arisen as to whether K&J's policy requires Lexington to pay the Board the judgment it is about to receive on its claims against K&J.

21.     Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a judicial declaration that Lexington is obligated to pay the Board the judgment it is about to receive on its claims against K&J.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment Against JMB)

22.     The Board repeats and realleges Paragraphs 1 through 21 above as if fully set forth herein.

23.     JMB dominated K&J so completely that K&J had no separate mind, will or existence of its own. On information and belief, this domination is demonstrated, *inter alia*, by the following:

   a.     The Sponsor and JMB agreed that the Sponsor was in fact employing JMB on the 195 Hudson Street conversion project, although it was then agreed that JMB would be paid through the shell of K&J in order to reduce costs through the use of non-union labor;

   b.     The original oral agreement between the Sponsor and JMB for construction management of the 195 Hudson Street Condominium was entered into in 1997. It was impossible for K&J to have been a party to that agreement because K&J was not formed until March 3, 1998, following the February 27, 1998 formation of K&J's general partner, Gonzalez Construction LLC ("Gonzalez");

   c.     The Sponsor would not have hired K&J in 1997 or 1998 for a multi-million dollar project because K&J had no track record in the industry. Rather, the only rational explanation for the retention of K&J was the understanding that the Sponsor was really hiring JMB at a less expensive, non-union price;

5

    d.  The Sponsor was billed for over $200,000.00 in construction management services rendered before the creation of K&J;

    e.  K&J's own sworn interrogatory answers in the Litigation identified at least one payment made directly to JMB by the Sponsor as payment to K&J. Significantly, this money was paid to JMB notwithstanding its sworn claim – in an interrogatory answer provided in the Litigation – that it did not enter into any contracts whatsoever with the Sponsor or K&J;

    f.  In it sworn interrogatory answers in the Litigation, JMB stated that it never entered into any contract with K&J. Nonetheless, it also admitted under oath that K&J paid JMB at least $437,000.00 in connection with the 195 Hudson Street conversion project;

    g.  K&J had no management employees. Rather, all of K&J's business was conducted and managed solely by JMB officers and employees including an individual who served as the Chief Financial Officer for K&J, JMB and Gonzalez. As a result, K&J was deprived of any discretion with respect to the management of its own affairs;

    h.  The JMB employees who supervised K&J's work on the 195 Hudson Street conversion project were paid their salaries by JMB, and considered themselves to be employees only of JMB;

    i.  K&J operated out of JMB's New York office, using the same mailing address and telephone number;

    j.  There was overlapping ownership of JMB and K&J;

    k.  Many of the documents created in connection with the 195 Hudson Street conversion project, such as spreadsheets and correspondence, referenced JMB, rather than K&J, as the author;

    l. All K&J profits were ultimately transferred to JMB with no consideration;

    m. Since at least 2002, K&J has been represented by the same lawyer who serves as JMB's general outside litigation counsel;

    n. During the Litigation, K&J's counsel stated that, even though K&J was defunct and judgment proof, he was continuing the defense of K&J because the Board had threatened to pursue an alter ego claim against JMB in the event that it prevailed against K&J;

    o. During the trial of the Litigation, K&J (and JMB's) counsel admitted that the two companies were one and the same when he contended that references to JMB in deposition transcripts be replaced by references to K&J;

    p. JMB insured both itself and K&J on the same insurance policy at issue in this action; and

    q. The JMB/K&J insurance policy issued by co-defendant Lexington listed K&J's address as JMB's Pennsylvania offices even though K&J (i) is a New York limited partnership whose general partner is a New York limited liability company, and (ii) is not registered to do business in Pennsylvania.

  24. JMB's domination and control of K&J was used to commit wrongs against the Board, including, *inter alia*: (a) stripping K&J of assets, thereby rendering K&J incapable of satisfying any judgment entered against K&J, and (b) procuring K&J's breach of its contractual obligations to the Sponsor. In addition, if it is determined that K&J's insurance policy does not cover the judgment to be entered against K&J, JMB used its domination and control of K&J to breach

K&J's contractual obligations by purchasing insurance for K&J that did not meet the insurance requirements of K&J's contract with the Sponsor.

25. The Board has been damaged by the control and wrong alleged above in that K&J has no assets, and possibly no insurance policy, from which the incipient judgment against it may be satisfied.

26. By reason of the foregoing, the Board contends that JMB is the alter ego of K&J.

27. JMB contends that it is not the alter ego of K&J.

28. A justiciable controversy has therefore arisen as to whether JMB is the alter ego of K&J.

29. Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a judicial declaration that JMB is the alter ego of K&J, against which the judgment to be obtained in the Litigation may be enforced.

**WHEREFORE**, Plaintiff demands Judgment as follows:

A. On Plaintiff's First Claim for Relief, a judicial declaration that Lexington is obligated to pay the Board the judgment it is about to receive on its claims against K&J;

B. On Plaintiff's Second Claim for Relief, a judicial declaration that JMB is the alter ego of K&J;

C. Costs and disbursements of this action; and

        D.      Such other and further relief as deemed just and proper by this Court.

Dated:      New York, New York  
              May 23, 2007

                                JUDD BURSTEIN, P.C.

                                By:_____  
                                   Judd Burstein (JB-9585)  
                              1790 Broadway, Suite 1501  
                              New York, New York 10019  
                              (212) 974-2400  
                              (212) 974-2944 (fax)  
                              jburstein@burlaw.com  
                              *Attorneys for Plaintiff*