UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BOARD OF MANAGERS OF THE
195 HUDSON STREET CONDOMINIUM,                          :

                             *Plaintiff,*             :

             - against -                      :

JEFFREY M. BROWN ASSOCIATES, INC. and   :
LEXINGTON INSURANCE COMPANY,
                                                :

                         *Defendants.*
-------------------------------------------------------------------X

Hon. Peter K. Leisure

07 Civ. 4058 (PKL)

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
## JEFFREY M. BROWN ASSOCIATES, INC.'S MOTION TO DISMISS

JUDD BURSTEIN P.C.
1790 Broadway, Suite 1501
New York, New York 10019
(212) 974-2400
*Attorneys for Plaintiff*

*Of Counsel*
    Peter B. Schalk
    Alexander M. Levy

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    The Present Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    The Northeast Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    The Conversion Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

POINT I

      THE BOARD'S CLAIMS ARE NOT BARRED BY *RES JUDICATA* . . . . . . . . . . . . . 11

      A.    Distinctions Between Issue and Claim Preclusion . . . . . . . . . . . . . . . . . . . . . . . 12

      B.    There Are No Grounds to Find Claim Preclusion Against the Board . . . . . . . . . 12

            I.    The Northeast Litigation Does Not Warrant a
                Finding of Claim Preclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            II.    The Conversion Litigation Does Not Warrant a
                Finding of Claim Preclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      C.    There Are No Grounds to Find Issue Preclusion Against the Board . . . . . . . . . . 17

            I.    The Conversion Litigation Does Not Warrant a
                Finding of Issue Preclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            II.    The Northeast Litigation Does Not Warrant a
                Finding of Issue Preclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Table of Authorities

Cases

*Allianz Ins. Co. v. Lerner,*
    296 F.Supp.2d 417, 422 (E.D.N.Y. 2003) (Wexler, D.J.) ........................ 13

*Barrett v. U.S.,*
    651 F.Supp. 611 (S.D.N.Y. 1986) (Motley, D.J.) .............................. 14

*Bonesteel v. Sechrist,*
    36 A.D.2d 876, 320 N.Y.S.2d 639 (3d Dep't 1971) ........................... 22

*CIBC Mellon Trust Co. v. Samuel Montagu & Co., Ltd.,*
    25 A.D.3d 492, 810 N.Y.S.2d 127 (1st Dep't 2006) .......................... 17

*Deutsch v. Integrated Barter Intern., Inc.,*
    700 F.Supp. 194 (S.D.N.Y. 1988) (Leisure, D.J.) ............................. 12

*Dolson v. Village of Washingtonville,*
    382 F.Supp.2d 598 (S.D.N.Y. 2005) (McMahon, D.J.) ......................... 11

*First Capital Asset Mgm't, Inc. v. N.A. Partners, L.P.,*
    260 A.D.2d 179, 688 N.Y.S.2d 25 (1st Dep't 1999) ...................... 14, 15

*Gilberg v. Barbieri,*
    53 N.Y.2d 285, 441 N.Y.S.2d 49 (1981) ............................ 19, 22, 23

*Hochroth v. William Penn Life Ins. Co. of New York,*
    Case No. 03-cv-7286,
    2003 WL 22990105 (S.D.N.Y. Dec. 19, 2003) (Holwell, D.J.) .................. 11

*Huston v. DeLeonardis,*
    44 A.D.2d 110, 353 N.Y.S.2d 771 (1st Dep't 1974) ........................ 21, 22

*In re Livent, Inc. Noteholders Securities Litigation,*
    174 F.Supp.2d 144 (S.D.N.Y. 2001) (Marrero, D.J.) ........................... 11

*Jimenez v. Shippy Realty Corp.,*
    213 A.D.2d 377, 622 N.Y.S.2d 983 (2 Dep't 1995) ........................... 18

*Kaufman v. Eli Lilly and Co.,*
    65 N.Y.2d 449, 492 N.Y.S.2d 584 (1985) ................................... 17

*Lindquist v. Chicago and Northwestern Transp. Co.,*
    309 Ill.App.3d 275, 722 N.E.2d 270 (Ill.App. 2d Dist. 1999) . . . . . . . . . . . . . . . . . . . . . 22

*Matter of McGrath v. Gold,*
    36 N.Y.2d 406, 369 N.Y.S.2d 62, 330 N.E.2d 35 (1975) . . . . . . . . . . . . . . . . . . . . . . . 18

*Morrison v. Blitz,*
    Case No.88 cv 5607,
    1995 WL 679259 (S.D.N.Y. Nov. 15, 1995) (Mukasey, D.J.) . . . . . . . . . . . . . . . . . . . . 11

*Parada v. City of New York,*
    283 A.D.2d 314, 725 N.Y.S.2d 32 (1st Dep't 2001) . . . . . . . . . . . . . . . . . . . . . . 12, 13, 20

*RENP Corp. v. Embassy Holding Co.,*
    229 A.D.2d 381, 644 N.Y.S.2d 567 (2d Dep't 1996) . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*RX Data Corp. v. Dept. of Social Services,*
    684 F.2d 192 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sucher v. Kutscher's Country Club,*
    113 A.D.2d 928, 493 N.Y.S.2d 829 (2d Dep't 1985) . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Thompson v. County of Franklin,*
    15 F.3d 245 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BOARD OF MANAGERS OF THE
195 HUDSON STREET CONDOMINIUM,                    :

                    *Plaintiff,*    :

        - against -    :

JEFFREY M. BROWN ASSOCIATES, INC. and    :
LEXINGTON INSURANCE COMPANY,

                        :

                    *Defendants.*
-----------------------------------------------------------------X

Hon. Peter K. Leisure

07 Civ. 4058 (PKL)

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JEFFREY M. BROWN ASSOCIATES, INC.'S MOTION TO DISMISS

Plaintiff BOARD OF MANAGERS OF THE 195 HUDSON STREET CONDOMINIUM

("Plaintiff" or the "Board"), respectfully submits this memorandum of law: (a) in opposition to

Defendant JEFFREY M. BROWN ASSOCIATES, INC.'s ("JMB") motion to dismiss pursuant to

Fed. R. Civ. P. 12(b)[1]; together with (b) such other and further relief as this Court deems just and

proper.

## PRELIMINARY STATEMENT

While not expressly stated in its motion papers, it appears that JMB moves to dismiss for an

alleged failure to state a claim under Fed. R. Civ. P. 12(b)(6). In any event, the crux of JMB's

---

[1]     JMB submitted a "Statement of Uncontroverted Material Facts in Support of Its
Motion to Dismiss." JMB clearly is not moving for summary judgment, because it never cites to
Fed. R. Civ. P. 56, and instead explicitly states that it is moving to dismiss under Rule 12(b).
Additionally, JMB's "Statement of Uncontroverted Material Facts" never cites to evidence outside
of the Complaint. Thus, even if JMB were seeking summary judgment (it is not), JMB's statement
fails to comply with Local Rule 56.1(d) ("Each statement by the movant or opponent pursuant to rule
56.1(a) and (b) ... must be followed by citation to evidence which would be admissible, set forth as
required by Federal Rule of Civil Procedure 56(e)"). Accordingly, we have not submitted a counter-
statement of disputed issues of material fact as a part of Plaintiff's opposition.

motion is that the Board is supposedly barred from pursuing this action against JMB by the doctrines

of issue and/or claim preclusion. In particular, JMB contends that the Board is prohibited from suing

JMB on the theory that JMB is the alter ego of K&J Construction, Co. ("K&J"), an entity that has

claimed to be insolvent after the Board obtained a multi-million dollar judgment against it in a

separate state court litigation. The motion should be denied.

By way of brief background, this action ultimately arises out of the conversion of an

industrial building located at 195 Hudson Street in Manhattan into upscale condominiums. The

Sponsor of the conversion hired K&J to act as the construction manager, and accordingly to hire sub-

contractors to perform the renovations to the Building. In a separate New York State Court litigation

(the "Conversion Litigation"), the Board obtained a multi-million dollar jury verdict against K&J

for breach of contract.[2] K&J now claims to be insolvent, and the Board in this case alleges, *inter*

*alia*, that JMB is the alter ego of K&J, and that JMB used its domination over K&J to improperly

strip it of assets so as to render K&J effectively judgment proof. JMB does not challenge these

allegations here.

---

[2]    More precisely, on May 9, 2007, the Board won a jury verdict against K&J on the
Board's breach of contract claims against K&J, and was awarded damages in the amount of
$2,106,728.09. On the day of the verdict, the Court denied K&J's motion to overturn the verdict,
but reserved judgment on $47,036.00 awarded by the jury in connection with K&J's failure to install
a security and intercom system in the building. K&J also moved for a set off with respect to
payments made by its co-defendants and a third party defendant. While judgment has not yet been
entered upon the jury's verdict, the Board believes that entry of judgment is imminent. Specifically,
the Court in the Conversion Litigation has advised counsel for the Board that a hearing will be held
on September 17, 2007, during which it is anticipated that a decision on the pending applications will
be rendered on the record, with entry of judgment to follow shortly thereafter. (*See* the
accompanying August 30, 2007, Declaration of Alexander M. Levy, Esq. (the "Levy Dec."), at ¶¶
23 and 24).

JMB's first argument for preclusive effect arises from litigation (the "Northeast Litigation") brought by a sub-contractor, Northeast Restoration, that K&J retained to perform roof and parapet work, *etc.*, in connection with the 195 Hudson Street conversion. In the Northeast Litigation, Northeast asserted claims for non-payment against, *inter alia*, JMB, the Board, and the Sponsor. It is entirely true that JMB successfully moved to dismiss **Northeast's** claims as against it in the Northeast Litigation. Furthermore, **Northeast's** claims against JMB were premised on the theory that JMB was the alter ego of K&J. Accordingly, **Northeast** certainly would be barred from asserting an alter ego theory against JMB in this case. However, the Board is not Northeast.

In contrast to Northeast, there is no legitimate basis to preclude the Board from pursuing a claim in this case that it never asserted in the Northeast Litigation, and which was never determined against it in that (or any other) proceeding. This is especially so considering that the Board asserted cross-claims against JMB in the Northeast Litigation for indemnification and contribution, and **those cross-claims were never dismissed**. Indeed, issue was never joined with respect to the Board's cross claims as against JMB.

In fact, as shown in more detail *infra*, the Board also succeeded in obtaining dismissal of Northeast's claims against it in the Northeast Litigation. It was only at that point that the Board's still extant cross-claims as against JMB for contribution and indemnification became moot. In other words, the Board was a successful litigant in the very case that JMB now claims should be binding against the Board. Moreover, because the Board obtained dismissal of Northeast's claims as against it, the Board's claims against JMB never became ripe. There is no basis in the law to find preclusionary effect under such circumstances.

JMB's second argument for preclusion arises from the Conversion Litigation, which is the suit in which the Board obtained its multi-million dollar jury verdict. While JMB was a defendant in the Conversion Litigation, the Board did not sue JMB under an alter-ego theory, but only for negligence. Furthermore, while the Board's negligence claim against JMB was dismissed upon motion, and JMB raised *res judicata* and collateral estoppel as grounds for dismissal as part of that motion, the Court in the Conversion Litigation explicitly chose not to rule on the basis of *res judicata* or collateral estoppel. Instead, the Court simply held that JMB did not owe a duty of care to the Board, because the Board was not a third party beneficiary of JMB's contract with the general contractor, K&J. Under those circumstances, as discussed in more detail *infra*, the law is clear that the Board may proceed against JMB under an alter ego theory in order to recover the substantial judgment that it obtained against K&J.

**PROCEDURAL HISTORY**

A.    <u>The Present Litigation</u>

On or about May 23, 2007, the Board filed the above-captioned lawsuit against JMB and the insurance carrier for both JMB and K&J, defendant Lexington Insurance Company ("Lexington"). The Board seeks a declaratory judgment that the Lexington policy covers the judgment against K&J in the Conversion Litigation, and a declaratory judgment that JMB is the alter ego of K&J.

While apparently brought under Rule 12(b)(6), JMB's motion does not attack the sufficiency of the allegations that JMB is the alter-ego of K&J. Nor could JMB do so credibly, as the Complaint contains detailed allegations that if proven, could readily support a claim that JMB is the alter ego of K&J. *See* Exhibit A to the Levy Dec., which is a true and accurate copy of the Complaint in this

4

action, at ¶¶ 23 and 24, and the subparagraphs thereto.[3] Rather, as noted, JMB contends that the Board is barred from pursuing its alter ego claim by the doctrines of issue and claim preclusion, based upon the judgments entered in the Northeast Litigation and the Conversion Litigation.

B.    The Northeast Litigation

The Northeast Litigation actually consisted of two consolidated actions. In the first action, Northeast sued K&J for breach of contract, account stated, and unjust enrichment. Northeast also asserted a claim against the Sponsor and Reliance Insurance Company ("Reliance") for a lien foreclosure concerning a mechanics lien filed against the Building. See the Blum Aff. at Exhibit 3, the Summons and Verified Complaint, dated May 23, 2000 (the "First Northeast Action"). The Board was not a party to the First Northeast Action, and JMB does not contend that the First Northeast Action serves to preclude the Board from proceeding against it in this case.

Northeast then brought a second action, commenced by service of a Summons with Notice, dated February 15, 2002 (the "Second Northeast Action"). See Blum Aff. at Exhibit 5. This time around, Northeast sued the Board, the Sponsor, and JMB. Pursuant to the Complaint in the Second Northeast Action, Northeast sought, inter alia, (i) $168,057, plus interest, against the Sponsor's and/or the Board's common charges held in a trust pursuant to Real Property Law § 339-1(2) for money due and owing; (ii) $168,057, plus interest, from the Board and Sponsor, jointly or severely, to the extent the trust did not have sufficient assets; (iii) $168,057, plus interest, against JMB, the alter ego of K&J, for K&J's breach of contract; and (iv) $168,057, plus interest, against JMB for unjust enrichment.

---

[3]    Unless otherwise indicated, as is the case with Exhibits already before the Court as annexed to the July 30, 2007 affidavit of Howard Blum, Esq. ("Blum Aff."), filed in support of the present motion, all Exhibits referenced herein are annexed to the Levy Dec.

Upon receipt of the Summons and Complaint, the Board referred the case to its insurance

carrier, Chubb & Son, a division of Federal Insurance Company ("Chubb"). (*See* the accompanying

August 30, 2007, declaration of Lynn Fisher Hill ["Hill Dec."], at ¶¶ 2-4). Chubb, consequently,

referred the matter to Hoey, King, Toker & Epstein ("Hoey King"), who, upon information and

belief, serves as house counsel for Chubb. (*See id*; *see also* Exhibit B, a true and accurate copy of

a printout from "Lawyers.com" providing that Hoey King is house counsel for Chubb). Accordingly,

the Board was not represented by counsel of its choice in the Second Northeast Action.

Hoey King served and filed a Verified Answer to the Complaint on behalf of the Board, dated

June 14, 2002 ("Answer"). *See* Exhibit C, a true and accurate copy of the Answer. The Answer

asserted cross-claims against both the Sponsor and JMB, but only on the theory that JMB would be

liable for indemnification and contribution in the event that the Board was found liable to Northeast.

Notably, JMB never served a Reply to the Board's cross-claims, so issue was never joined with

respect to the merits of the Board's claims against JMB. (*See* Exhibit D, a true and accurate copy

of the docket in the Northeast Litigation; *see also* the accompanying August 30, 2007 declaration

of Sandra Guzman, at ¶¶ 4-5).[4]

Thereafter, the First Northeast Action, which was dismissed but for the claim against K&J

for breach of contract, was consolidated with the Second Northeast Action (collectively referred to

herein as the Northeast Litigation). JMB answered the Complaint in the Second Northeast Action,

---

[4]    We note that JMB mistakenly represents to the Court as part of this motion that the
Board did not cross-claim against JMB in the Northeast Litigation. (*See* JMB's Memorandum of
Law in support of the present motion at p. 2, erroneously claiming that "[t]here were no cross-claims
filed against JMB [in the Northeast Litigation]."). As the foregoing makes clear, JMB is mistaken
in this regard.

but it did not assert any counterclaims or cross claims against, *inter alia*, the Board. *See* Exhibit E, a true and accurate copy of JMB's Answer in the Second Northeast Action.

JMB filed a motion to dismiss Northeast's Complaint in the Second Northeast Action pursuant to New York's Civil Practice Law and Rules ("CPLR") 3211(a)(1). However, JMB did **not** move to dismiss the cross-claims asserted against it by the Board. JMB's motion against Northeast was later converted into a motion for summary judgment. The Board, as represented by insurance defense counsel, did not file any opposition to JMB's motion, which was not directed to its cross-claims.

By Decision and Order, dated February 11, 2003, Justice Edward H. Lehner granted JMB's motion and dismissed Northeast's Complaint against JMB (the "Northeast Decision"). *See* Blum Aff. at Exhibit 8, which is a true and accurate copy of the Northeast Decision. **The Northeast Decision did not dismiss the Board's cross-claims, but instead did not even mentioned them.** *Id.* Thereafter, on April 8, 2003, a Judgment was entered in the New York State Supreme Court, New York County, dismissing the Complaint against JMB (the "Northeast Judgment"). *See* Exhibit F, a true and accurate copy of the Northeast Judgment. As was the case with the Northeast Decision, **the Northeast Judgment did not even reference the Board's cross-claims, let alone enter judgment against the Board.** Thus, the Northeast Judgment did not even encompass the Board's claims against JMB. *Id.*

Thereafter, by Decision and Order, dated May 4, 2004, Justice Edward H. Lehner granted the motion for summary judgment brought by the Sponsor and the Board. *See* Exhibit H, which is a true and accurate copy of the Honorable Edward H. Lehner, J.S.C.'s May 4, 2004, Decision and Order. In sum, Justice Lehner held that the Board was not liable for the injury claimed by Northeast.

Accordingly, the Board was a successful litigant in the Northeast Litigation. Because the Board was a defendant in the Northeast Litigation, once Northeast's claims were dismissed as against the Board, its cross-claims for indemnification and contribution were mooted. To be clear, however, the Board's cross-claims against JMB were never dismissed, on the merits or otherwise.

C.    The Conversion Litigation

On or about October 29, 2003, the Board commenced the Conversion Litigation against, among others, JMB, K&J, the Sponsor, the engineer, and the architect, for a host of significant problems in the Building. *See* Blum Aff. at Exhibit 9, a copy of the Summons and Complaint in the Conversion Litigation.

As against K&J, the Board alleged that it was a third party beneficiary of K&J's contract with the Sponsor, and that K&J's defective construction work on the conversion project had breached that contract by, *inter alia*, failing to render professional services called for by the contract.

As against JMB, the Board did not assert that liability was premised upon an alter ego theory. Rather, the Board alleged that JMB independently owed a duty of care to the Board – and thus could be held liable for negligence – because its agents were present and assumed supervisory and inspection roles during the conversion construction. The Board further alleged that JMB owed a duty of care to the Board based upon JMB's contractual relationship with K&J, *i.e.*, that the Board was a third party beneficiary of K&J's contract with JMB, or alternatively, that JMB owed a duty of care because it was a volunteer. Thus, the Board alleged as follows:

> [JMB] thereby undertook and owed a duty to [the Board], to properly supervise, inspect and ensure that the Construction Project was performed in a proper and workmanlike manner.

8

[JMB]'s duty of care is based on [JMB]'s status in its contractual relationship (be it oral or written) between [JMB] and K&J, or [JMB]'s status as a volunteer.

[JMB] was obligated to perform its duties in a way that did not cause injury to foreseeable third parties such as the purchasers of the condominium units.

By reason of the aforementioned design and construction defects, deficiencies and uncompleted items, [JMB] has willfully, recklessly and/or negligently failed to properly construct, supervise and inspect the condominium facilities and premises involved in the Construction Project.

The Board, on behalf of the condominium association and its unit owners, has or will sustain damages proximately caused by the acts and/or failures to act, by [JMB], its agents and employees.

The construction defects have adversely affected the standard of living of the unit owners, have damaged the property and the value of the Building as a whole, and have impaired the value of the individual units and the ability of the unit owners to sell their units.

By reason of the foregoing, [JMB] is liable to Plaintiff for damages in an amount to be determined at trial, but in no event less than $5,500,000.00.

(*See* Exhibit I, a true and accurate copy of the Board's First Amended and Supplemental Verified Complaint in the Conversion Litigation, dated February 9, 2004, at ¶¶ 157-163).[5]

JMB moved to dismiss the Complaint in the Conversion Litigation pursuant to CPLR 3211, contending that the Board's claims were barred by *res judicata* and collateral estoppel, and further that the Board was not a third party beneficiary of JMB's agreement with K&J. The Board's claims against JMB in the Conversion Litigation were dismissed by Justice Walter B. Tolub in a Decision and Order dated June 30, 2004 (the "June 2004 Tolub Decision"). Justice Tolub, however, did **not** dismiss the Board's claims against JMB based upon a finding that *res judicata* or collateral estoppel

---

[5]    Although JMB cites to the original Complaint in the Conversion Litigation, the First Amended and Supplemental Verified Complaint was the operative pleading at the time JMB brought its motion to dismiss.

barred the Board's claims. Nor did Justice Tolub find that JMB was not the alter ego of K&J.

Rather, Justice Tolub simply held that the Board was not a third party beneficiary of K&J's contract

with JMB:

> Neither [the Board] nor [JMB] was a party to th[e construction contract between the
> Sponsor and K&J]. Brown provided employees to K&J ... pursuant to an oral
> agreement to which [the Board] was not a party.
>
> Brown provided its employees pursuant to an agreement. [The Board] seeks
> to recover from defendant for **negligence**, not breach of contract. Where a duty is
> created by contract, the failure to perform that duty generally gives rise to
> contractually [sic] liability only.
>
> * * *
>
> ... [The Board's] complaint fails to allege facts that would establish either an
> agreement that intentionally rendered [the Board] a third-party beneficiary or an
> exception to the rule that no duty is owed to a non-contracting party applies.

*See* Blum Aff. at Exhibit 10 (emphasis supplied).

Thus, while Justice Tolub acknowledged that "Defendant [JMB] argues that the complaint

should be dismissed based upon documentary evidence, **collateral estoppel** and failure to state a

claim" (*id.* at p. 1) (emphasis supplied), the Court nonetheless based its ruling solely on the finding

that JMB owed the Board no duty of care. *Id.* at pps. 1-2. Accordingly, because *res judicata* and

collateral estoppel were expressly raised by JMB in the Conversion Litigation, and yet they did not

form a basis for Justice Tolub's dismissal, those issues have not been determined as a result of the

Conversion Litigation.

In April 2007, the Board settled its claims against the Sponsor, as well as the architect and

the engineer, thus leaving K&J as the only remaining defendant in the case. On May 9, 2007, a jury

returned a verdict in favor of the Board and against K&J on the Board's breach of contract claims,

10

and awarded damages in the amount of $2,106,728.09. On the day of the verdict, the Court denied

K&J's motions to overturn the verdict, but reserved judgment on $47,036.00 awarded by the jury

in connection with K&J's failure to install a security and intercom system in the building.

## ARGUMENT

### POINT I

### THE BOARD'S CLAIMS ARE NOT BARRED BY *RES JUDICATA*

"*Res judicata* challenges may properly be raised via a motion to dismiss for failure to state

a claim under Rule 12(b)(6).[6]" *Thompson v. County of Franklin,* 15 F.3d 245, 253 (2d Cir. 1994)

(citing 5A Wright & Miller § 1357, at 356 n. 69). The Court will look to the law of the State where

the prior decision was rendered to determine if the claim is barred. *See Morrison v. Blitz,* Case No.

88 cv 5607, 1995 WL 679259, at *3 (S.D.N.Y. Nov. 15, 1995) (Mukasey, D.J.). Accordingly,

because the prior determinations that JMB now maintains bar the Board's claims were rendered by

New York State courts, New York law governs this motion. *See id.*

---

[6]       As we are at the pleading stage, JMB faces a heavy burden on this motion. It is well-
known that on a Rule 12(b)(6) dismissal motion, "the standard of review is heavily weighted in favor
of the plaintiff." *Dolson v. Village of Washingtonville,* 382 F.Supp.2d 598, 600 (S.D.N.Y. 2005)
(McMahon, D.J.). On a Rule 12(b)(6) motion, "the Court's only role is to determine the sufficiency
of the pleadings." *In re Livent, Inc. Noteholders Securities Litigation,* 174 F.Supp.2d 144, 158
(S.D.N.Y. 2001) (Marrero, D.J.). "[T]he court is required to read a complaint generously, accepting
all the alleged facts as true and drawing all reasonable inferences in favor of the plaintiff." *Hochroth
v. William Penn Life Ins. Co. of New York,* Case No. 03-cv-7286, 2003 WL 22990105, at *1
(S.D.N.Y. Dec. 19, 2003) (Holwell, D.J.) (Internal citations omitted). "The court must deny the
motion unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his
claim that would entitle him to relief." *Id.*

11

## A.    Distinctions Between Issue and Claim Preclusion

*Res judicata* and collateral estoppel are often (erroneously) used interchangeably.  As JMB

fails to distinguish one from the other in its motion papers, a brief discussion as to the difference

between the doctrines is warranted.  As held by this Court in *Deutsch v. Integrated Barter Intern.,*

*Inc.*:

> "*Res judicata*" refers broadly to the idea that a matter, once judicially decided,
> should not be relitigated.  There are two concepts embraced by *res judicata*: issue
> preclusion and claim preclusion.  Issue preclusion is often referred to as "collateral
> estoppel," ....  It refers to the preclusive effect of a judgment that prevents a party
> from litigating, for a second time, an issue of fact or law that has once been
> decided....
>
> Claim preclusion is often referred to by the name of the broader concept of
> which it is a part, *res judicata*.  Claim preclusion involves the relief accorded to the
> parties on the same "cause of action."  It prevents litigation of a matter that could
> have been raised and decided in a previous suit, whether or not it was actually raised.
> This idea will be referred to here as "claim preclusion."

700 F.Supp. 194, 196 (S.D.N.Y. 1988) (Leisure, D.J.) (Citations omitted).  Accordingly, we will use

these defined terms, *i.e.*, "claim preclusion" and "issue preclusion", in this Memorandum of Law.

## B.    There Are No Grounds to Find Claim Preclusion Against the Board

### I.    The Northeast Litigation Does Not Warrant a Finding of Claim Preclusion

Claim preclusion is inapplicable with respect to the Second Northeast Action[7] for the simple

reason that the Board's cross-claims in that case were never dismissed, let alone determined on the

merits.  *Parada v. City of New York*, 283 A.D.2d 314, 316, 725 N.Y.S.2d 32, 35 (1st Dep't 2001),

is directly on point.  In *Parada*, a passenger who was injured in a motor vehicle accident sued the

drivers of the vehicles, as well as New York City, under the theory that plantings on the median mall

---

[7]    As discussed *supra*, the Board was not a party to the First Northeast Action, and JMB
does not contend that that litigation is the source of the alleged preclusionary effect.

12

inhibited the drivers' range of vision. The City ultimately cross-claimed against the landscaper and

the Park Avenue Malls Planting Project (the "Project").

In *Parada*, exactly as here, the City's co-defendants moved successfully for summary

judgment, and the City did not oppose the motion, although it also moved to dismiss. In *Parada*,

again as here, the Supreme Court did not address the merits of the City's cross-claims. Nonetheless,

in *Parada*, **unlike** here, the Supreme Court actually dismissed the City's cross-claims in disposing

of the various motions to dismiss. On appeal, the City was reinstated as a defendant. Thereafter,

the City brought a direct action against the co-defendants landscaper and the Project, who moved to

dismiss based upon *res judicata* and collateral estoppel. The Supreme Court denied the motion, and

the Appellate Division, First Department, affirmed, holding:

> It is clear, therefore, that ... the dismissal of the City's cross claims was not on the
> merits and this Court's disposition was limited to the holding that plaintiff could not
> recover against the Landscaper and the Project directly. Accordingly, neither *res*
> *judicata* nor collateral estoppel serve to foreclose the City from interposing its
> third-party action for contribution and indemnification against the Landscaper and
> the Project.

*Parada*, 283 A.D.2d at 316, 725 N.Y.S.2d at 35.

Accordingly, the facts militating **against** claim preclusion are even more persuasive here than

they were in *Parada*, considering that in *Parada*, the City's cross-claims actually were dismissed,

albeit not on the merits. Here, by way of contrast, issue was never even joined with respect to the

cross-claims asserted by the Board in the Northeast Litigation.

*Allianz Ins. Co. v. Lerner*, 296 F.Supp.2d 417, 422 (E.D.N.Y. 2003) (Wexler, D.J.), is also

on point. In *Allianz*, a plaintiff sued a number defendants for personal injuries arising out of a motor

vehicle accident involving a leased automobile. The leasing company asserted cross-claims against

13

the co-defendants. Plaintiff then settled against each of the defendants, and separate stipulations of dismissal were filed between the plaintiff and each of the defendants. The cross-claims, however, were not dismissed as part of the settlement. When the leasing company subsequently sued its co-defendants, and they moved to dismiss based upon the doctrine of claim preclusion, the Court denied the motion, holding:

> The stipulations intended only to dismiss the state court plaintiff's personal injury claims against each of the defendants so as to conclude that part of the litigation. The contractual cross-claim raised by MBCC against Regina Lerner was neither expressly nor impliedly disposed of by the stipulations settling plaintiff's personal injury claims against the defendants. That claim remains viable and is not barred by *res judicata*.

*Id.* at 422.

Claim preclusion is further inappropriate here, because the Board and JMB did not "actively" litigate against each other. *See Barrett v. U.S.,* 651 F.Supp. 611, 612-613 (S.D.N.Y. 1986) (Motley, D.J.) (As set forth in *Barrett v. U.S.,* "where, as here, codefendants did not actively litigate the prior action as adversaries, it is clear there can be no *res judicata* effect. *RX Data Corp. v. Dept. of Social Services,* 684 F.2d 192, 196 (2d Cir. 1982)."). Indeed, JMB did not serve a Reply to the Board's Cross-Claims, and so issue was never even joined. Furthermore, JMB never asserted any claims against the Board in the Northeast Litigation. In short, the Board and JMB focused their energies on obtaining a dismissal of Northeast's direct claims.

## II.    The Conversion Litigation Does Not Warrant a Finding of Claim Preclusion

JMB's position that the Board should be precluded from bringing an alter ego/piercing the corporate veil claim here, because the Board supposedly had an obligation to do so in the Conversion Litigation, ignores dispositive precedent to the contrary. *See First Capital Asset Mgm't, Inc. v. N.A. Partners, L.P.,* 260 A.D.2d 179, 688 N.Y.S.2d 25 (1st Dep't 1999).

14

In *First Capital*, the plaintiff in the original action sued corporate defendants and an individual ("Sohrab"), contending that they were directly liable for payment of the purchase price due and owing under a stock purchase agreement. While the plaintiff obtained a judgment as against the corporate defendants, the direct liability claims against Sohrab were dismissed based upon a finding that Sohrab was not personally liable for the stock purchase price. The plaintiff then commenced separate enforcement proceedings, and joined Sohrab, alleging that, as here, the judgment debtors were his alter egos. When the Supreme Court dismissed the petition as to Sohrab by invoking *res judicata*, the Appellate Division, First Department, reversed, holding:

> The dismissal of the complaint as against Sohrab in the prior action was based on the finding that he was not personally liable for the purchase price under the terms of the stock purchase agreement, and did not preclude a subsequent proceeding to enforce the judgment against Sohrab based on allegations that would support piercing the corporate veil of the judgment debtors ... inasmuch as the necessary elements of proof and evidence required to sustain recovery vary materially.

*First Capital*, 260 A.D.2d at 182, 688 N.Y.S.2d at 27.

Accordingly, the situation in *First Capital* is **identical** to the one presented here. In particular, (a) a claim of direct liability was dismissed as against a defendant in the original action; and (b) in the context of subsequent enforcement proceedings, that same defendant was joined once again, only this time under an alter-ego theory of liability. *First Capital* holds that under those circumstances, claim preclusion does not serve as a bar to the subsequent alter-ego claim.

Also directly on point is *RENP Corp. v. Embassy Holding Co.*, 229 A.D.2d 381, 644 N.Y.S.2d 567 (2d Dep't 1996). There, the underlying action was brought by a consultant seeking payment for services rendered against a holding company ("Embassy Company") and a holding corporation ("Embassy Corp.") (collectively the "Embassy Defendants"). The consultant obtained

15

judgment against Embassy Corp., while the consultant's claims were dismissed as against Embassy

Company. *RENP Corp.,* 229 A.D.2d at 381-382, 644 N.Y.S.2d at 568-569.

The consultant brought a subsequent action against the Embassy Defendants and an

individual ("Kraus"), contending that after Embassy Corp. had entered into the consulting agreement

with plaintiff, Kraus caused the Embassy Corp. to transfer substantial assets to the other defendants

without fair consideration. The Embassy Defendants moved for summary judgment, arguing that

the claims were barred by the doctrine of *res judicata*, because they had both been parties to the

underlying action. The Supreme Court granted summary judgment in favor of the Embassy

Defendants. *RENP Corp.,* 229 A.D.2d at 382-383, 644 N.Y.S.2d at 569.

On appeal, the Appellate Division, Second Department, reversed the Lower Court's dismissal

of plaintiff's alter ego/piercing claims against the Embassy Defendants. In finding that *res judicata*

did not bar plaintiff's claims against the Embassy Defendants, the Second Department held:

> The first action was based essentially on allegations of breach of contract, and
> involved proof of the circumstances surrounding the formation of the consultation
> agreement. The present action focuses instead on Herman I. Kraus' alleged
> self-dealing and undercapitalization of the corporate judgment debtor....[W]e
> conclude that [t]he differences which exist between the issues raised in the prior
> litigation and those raised now, namely the differences in the kind of relief sought,
> in the kind of facts to be proved, and in the kind of law to be applied, outweigh the
> similarities to such an extent as to render the doctrine of *res judicata* inapplicable.

*RENP Corp.,* 229 A.D.2d at 382, 644 N.Y.S.2d at 569 (internal citations and quotations omitted.)

The Board is thus not barred from bringing an alter ego claim here, despite JMB's apparent

contention that it could have been raised in the Conversion Litigation.

C.    **There Are No Grounds to Find Issue Preclusion Against the Board**

The doctrine of issue preclusion prevents a party from relitigating an issue that has previously been necessarily decided in a proceeding in which the party had a fair opportunity to fully litigate the issue. There are two requirements which must be satisfied before the doctrine of issue preclusion can be invoked:

> **First**, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and **second**, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination. The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action.

*Kaufman v. Eli Lilly and Co.,* 65 N.Y.2d 449, 455-56, 492 N.Y.S.2d 584, 588 (1985) (internal citations and quotations omitted; emphasis supplied).

I.    The Conversion Litigation Does Not Warrant a Finding of Issue Preclusion

As concerns the Conversion Litigation, issue preclusion is unavailable to JMB on the question of JMB's status as K&J's alter ego, for the simple reason that the issue was never even raised in that case. JMB has thus failed to satisfy its initial burden of demonstrating that an "identical issue necessarily must have been decided in the prior action and be decisive of the present action." *Kaufman,* 65 N.Y.2d at 455, 492 N.Y.S.2d at 588.

*CIBC Mellon Trust Co. v. Samuel Montagu & Co., Ltd.,* 25 A.D.3d 492, 492-493, 810 N.Y.S.2d 127, 128-129 (1st Dep't 2006), is on point. There, the Appellate Division, First Department, recently found that there could be no issue preclusion in a subsequent litigation because:

> [T]he only issue actually decided by the English court was that the money used for the purposes of this series of transactions came from another source, not

17

Gambazzi, thus precluding plaintiffs from moving against one of the companies in the series of transactions (Chinablue Investment S.A.) to collect this money as part of the judgment against Gambazzi, because there was no evidence that Gambazzi was the owner of Chinablue or of the funds it received. The court did not decide the propriety of the 1994 transactions in their entirety, and indeed did not have to reach that question.

Turning to the question of whether issue preclusion applies in this case on the subjects of collateral estoppel and/or *res judicata*, there is at least identity of issue with the Conversion Litigation.[8] However, as also discussed *supra*, Justice Tolub expressly declined to rule on those grounds, instead basing his decision on a lack of a duty of care. (*See* Blum Aff. at Exhibit 10, where Justice Tolub premised the dismissal of the Board's negligence claims upon his findings that: "[The Board's] complaint fails to allege facts that would establish either an agreement that intentionally rendered [the Board] a third-party beneficiary or an exception to the rule that no duty is owed to a non-contracting party applies."). Accordingly, the applicability of *res judicata* and collateral estoppel were never necessarily determined in the Conversion Litigation, and cannot bind the Board in this case. *See Jimenez v. Shippy Realty Corp.*, 213 A.D.2d 377, 378, 622 N.Y.S.2d 983, 985 (2 Dep't 1995):

> The Justice Court did not finally adjudicate or dispose of the appellant's cause of action for consequential damages for loss of business and profits, *etc*. In fact, the Justice Court specifically declined to determine that issue on the ground that this cause of action was pending in the instant action. The Justice Court's decision not to decide this issue, and to defer its final determination to the Supreme Court, precludes application of the doctrine of collateral estoppel.

(Citing *Matter of McGrath v. Gold*, 36 N.Y.2d 406, 369 N.Y.S.2d 62, 330 N.E.2d 35 (1975)).

---

[8]      Thus, Justice Tolub acknowledged that "Defendant [JMB] argues that the complaint should be dismissed based upon documentary evidence, **collateral estoppel** and failure to state a claim." Blum Aff. at Exhibit 10 (emphasis supplied) (emphasis supplied).

18

II.    The Northeast Litigation Does Not Warrant a Finding of Issue Preclusion

The Northeast Litigation provides no basis for issue preclusion on the subjects of *res judicata* or collateral estoppel, because neither issue was raised in that litigation. Accordingly, as was the case with the alter ego claim in the Conversion Litigation, there is no identity of issue.

Nor does the Northeast Litigation provide grounds for a finding of issue preclusion as to JMB's status as K&J's alter ego, because the Board never had a full and fair opportunity to litigate that issue. The inquiry as to whether a party had a full and fair opportunity to contest an issue was discussed by the Court of Appeals in *Gilberg v. Barbieri*, which held:

> [t]he question as to whether a party has had a full and fair opportunity to contest a prior determination cannot be reduced to a formula. It cannot, for instance, be resolved by a finding that the party against whom the determination is asserted was accorded due process in the prior proceeding. The point of the inquiry, of course, is not to decide whether the prior determination should be vacated but to decide whether it should be given conclusive effect beyond the case in which it was made.
>
> [W]hen collateral estoppel is in issue, the question as to whether a party had a full and fair opportunity to litigate a prior determination, **involves a practical inquiry into "the realities of litigation."** A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.

53 N.Y.2d 285, 292, 441 N.Y.S.2d 49, 51 (1981) (citations omitted; emphasis supplied).

In essence, the "[a]pplicability of the doctrine [of issue preclusion] must be determined on a case-by-case basis, without rigidity, and **the overall fairness of applying the doctrine must be the crowning consideration."** *Sucher v. Kutscher's Country Club,* 113 A.D.2d 928, 931, 493 N.Y.S.2d 829, 832-833 (2d Dep't 1985) (citations omitted; emphasis supplied).

19

The realities of the Northeast Litigation were such that issue preclusion should not bar the Board from contending that JMB is the alter ego of K&J in this case. Instead, in light of the realities of the Northeast Litigation, it would be patently unfair for a host of reasons to preclude the Board from proceeding under an alter-ego theory here.

**First**, as a result of JMB's dismissal motion, it was Northeast's claims against JMB that were dismissed, not the Board's cross-claims, which were never dismissed. Accordingly, the Board had no incentive to oppose JMB's motion, because the Board could still proceed under its cross-claims. *See Parada*, 283 A.D.2d at 316, 725 N.Y.S.2d at 35 (1st Dep't 2001) (Because the "Court's disposition was limited to the holding that plaintiff could not recover against the Landscaper and the Project directly ... neither *res judicata* nor collateral estoppel serve to foreclose the City from interposing its third-party action for contribution and indemnification....").

**Second**, it is highly significant in a "realities of litigation" analysis that the Board was represented by its insurance carrier's counsel. Hoey King had no incentive to protect the Board's future interests that were separate and apart from the Northeast Litigation, by opposing JMB's motion to dismiss Northeast's claims. This is especially true, considering that the Board (and Chubb) were protected by the Board's cross-claim against JMB, as to which no motion to dismiss was ever made. Taking into account the realities of the Northeast Litigation, then, it would be patently unfair to punish the Board, because counsel appointed by Chubb did not seek to prevent against the possibility that JMB might one day argue in a subsequent litigation that the Board's failure to oppose JMB's motion to dismiss **Northeast's** claims precluded the Board from ever raising the issue of JMB's status as K&J's alter ego.

20

Indeed, it is unlikely that such a hypothetical concern would have even entered the mind of

counsel that had been retained by Chubb for the specific purpose of defending against Northeast's

claims. Rather, Hoey King did exactly what one would expect the law firm to do in order to protect

the insurer's interests, *i.e.* make sure the carrier was not liable for the $168,057, plus interest.

*Huston v. DeLeonardis,* 44 A.D.2d 110, 113-114, 353 N.Y.S.2d 771, 774-775 (1st Dep't

1974), is on point. *Huston* arose out of a two-car motor vehicle accident that spawned three separate

litigations. A driver of one of the vehicles ("Huston"), was a defendant in the first and third lawsuits,

and a plaintiff in the second case. As a defendant in the first and third actions, Huston was

represented by insurance counsel. The jury deadlocked as to the second lawsuit, where Huston was

a plaintiff, and found him liable in the first litigation, while inconsistently finding that he was not

liable in the third litigation. The trial court in the second litigation then granted a motion to dismiss

Huston's claims, holding that a new trial would be futile, because all of the elements rendering

Huston vulnerable to the defense of estoppel were present. Insurance counsel then failed to timely

appeal the judgment against Huston in the first litigation. Nonetheless, the Appellate Division, First

Department, held that collateral estoppel did not apply to bar a new trial:

> Huston was not afforded a full and fair opportunity to establish his lack of negligence
> in Actions No. 1 and 3 which is the issue now claimed to be necessarily decisive of
> his own claim for personal injuries in Action No. 2, Schwartz v. Public
> Administrator, Supra. In Actions No. 1 and 3 Huston was represented not by counsel
> of his choice, but rather by an attorney for his insurance carrier. The failure to perfect
> an appeal from the judgments entered on these patently erroneous verdicts in those
> actions bespeaks a division of loyalties which foreclosed adequate representation of
> Huston's interests. The insurance carrier was clearly motivated by its own financial
> interest evidenced by a willingness to throw in its $10,000 coverage and incur no
> further expense in defending the claims against Huston at the sacrifice of Huston's
> very substantial interest in his own personal injury claim in Action No. 2. Under
> such circumstances it is not enough to assert that Huston has recourse against the
> insurance carrier. **The policy of judicial economy represented by the doctrine of**

> **collateral estoppel must here yield to the paramount tenet of our judicial system
> that a litigant shall be afforded his day in court for the purpose of proving his
> claim**.

(Citing *Bonesteel v. Sechrist*, 36 A.D.2d 876, 320 N.Y.S.2d 639 (3d Dep't 1971) (emphasis

supplied).[9] In view of *Huston*'s holding, it would violate the "crowning consideration" pertaining

to any consideration of collateral estoppel, namely, the question of "overall fairness," to deprive the

Board of the ability to prove that JMB, as K&J's alter ego, improperly diverted funds from K&J that

could have been used to satisfy the Board's judgment in the Conversion Litigation. *Sucher*, 113

A.D.2d at 931, 493 N.Y.S.2d at 832-833.

**Third**, over and above the fact that the Board was insured against Northeast's claim by

Chubb, the Sponsor had further agreed to indemnify and hold the Board harmless in the Northeast

Action. (*See* Exhibit G, a true and accurate copy of a July 25, 2002 stipulation agreeing to same).

Hence, there was less incentive for the Board to actively litigate the Northeast Litigation, because,

as a practical matter, that action presented no risk of liability to the Board. *Gilberg*, 53 N.Y.2d at

292, 441 N.Y.S.2d at 51.

**Fourth**, the extent of the Northeast Litigation was quite limited, considering that: (a) JMB

never cross-claimed against the Board; and (b) Northeast's claims in the Second Northeast Action

against JMB, the Sponsor, and the Board were all dismissed upon motion practice. *Gilberg*, 53

---

[9]    This principle has been recognized in other jurisdictions as well. *See, e.g., Lindquist
v. Chicago and Northwestern Transp. Co.*, 309 Ill.App.3d 275, 288, 722 N.E.2d 270, 280-280
(Ill.App. 2d Dist. 1999) ("[A]s plaintiffs point out, there was virtually no incentive for the
'insurance-appointed defense counsel' to pursue an action against defendant within the context of
the *Pellegrino* case. In that circumstance, the failure to litigate defendant's negligence cannot be
viewed as a concession on that issue. Accordingly, we do not find the doctrine of collateral estoppel
to be applicable to the appeal before us.").

N.Y.2d at 292, 441 N.Y.S.2d at 51. As such, the Board's cross-claims against JMB became moot, and there was no reason to pursue them.

**Fifth**, courts consider the availability of new evidence in any fairness analysis. *Gilberg*, 53 N.Y.2d at 292, 441 N.Y.S.2d at 51. In the Complaint in this litigation, the Board sets forth a host of detailed allegations as to JMB's alter ego status that came to light through the discovery process in the Conversion Litigation. (*Compare* the allegations raised in the Second Northeast Action to the detailed allegations in ¶¶ 23 to 24 of the Complaint in this action). Furthermore, the Board obtained this information without having access to discovery against JMB in the Second Northeast Action – the only Northeast litigation in which the Board was a party – because it achieved dismissal of Northeast's claims based upon a pre-discovery motion for failure to state a claim. In this case, the Board would depose Jeffrey M. Brown, the principal of JMB, and obtain financial discovery, including, but not limited to, JMB's books and records and tax returns. That discovery was not available in the Conversion Litigation, moreover, because it was irrelevant there, but it is directly relevant in this case.

\* \* \*

In view of the foregoing, we respectfully submit that an application of issue preclusion in this case with respect to the Board's alter ego claim would violate the overall fairness requirement underlying the doctrine of collateral estoppel, because the Board never had a full and fair opportunity to litigate the issue in the Northeast Litigation.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that this Court deny JMB's motion in

full, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      August 31, 2007

                                 Respectfully yours,

                                 JUDD BURSTEIN, P.C.,

                                 _____

                By:    Judd Burstein (JB-9585)
                                 1790 Broadway, Suite 1501
                                 New York, New York 10019
                                 Tel. 212-974-2400
                                 Fax 212-974-2944

Of counsel:
      Peter B. Schalk
      Alexander M. Levy

24