# EXHIBIT I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------- x

BOARD OF MANAGERS OF THE 195 HUDSON
STREET CONDOMINIUM,

                      Plaintiff,

          -against-

195 HUDSON STREET ASSOCIATES, LLC, 195
HUDSON ASSOCIATES, LLC, STEVEN
BLUMENTHAL, SYNCHRON ACQUISITION CORP.
K&J CONSTRUCTION CO., LP,
PERFIDO WEISKOPF ARCHITECTS,
KALLEN & LEMELSON CONSULTING ENGINEERS,
LLP, JEFFREY M. BROWN ASSOCIATES, INC.,
NEVERSINK CONSTRUCTION CORP., NEVERSINK
GLASS CORP., NORTHEAST RESTORATION CORP.,
GONZALEZ CONSTRUCTION, LLC, MARSHALL
COHEN and CHRISTINE MALLOY,

                   Defendants.

-------------------------------------------------------------- x

Index No. 118784/03
Date of Filing: February _____, 2004

Plaintiff Designates New York
County as the place of trial.

The basis of venue is the location of
the Plaintiff 195 Hudson Street
Condominium

**SUPPLEMENTAL SUMMONS**

NEW YORK
COUNTY CLERK'S OFFICE

FEB 1 0 2004

NOT COMPARED
WITH COPY FILED

      YOU ARE HEREBY SUMMONED TO ANSWER THE FIRST AMENDED AND

SUPPLEMENTAL VERIFIED COMPLAINT in this action and to serve a copy of your answer on

plaintiff's attorneys within twenty (20) days after the service of this Supplemental Summons, exclusive of

the day of service, or within thirty (30) days after the service is complete if the Summons is not personally

delivered to you within the State of New York; and in the case of your failure to appear or answer,

judgment will be taken against you by default for the relief demanded in the First Amended and

Supplemental Verified Complaint.

Dated: New York, New York
       February 9, 2004

BRAVERMAN & ASSOCIATES, P.C.

By:

    Edward T. Braverman
Attorneys for Plaintiff
33 Madison Avenue
New York, New York 10017
(212) 682-2900

Defendants' Addresses

195 HUDSON STREET ASSOCIATES, LLC
c/o Ross & Cohen LLP
711 Third Avenue
New York, New York 10017

195 HUDSON ASSOCIATES, LLC
c/o Ross & Cohen LLP
711 Third Avenue
New York, New York 10017

STEVEN BLUMENTHAL
c/o Ross & Cohen LLP
711 Third Avenue
New York, New York 10017

SYNCHRON ACQUISITION CORP.
c/o Ross & Cohen LLP
711 Third Avenue
New York, New York 10017

K&J CONSTRUCTION CO., LP
c/o Rivelis, Pawa & Blum LLP
21 East 40th Street, 14th Floor
New York, New York. 10016

PERFIDO & WEISKOPF ARCHITECTS
c/o Newman Fitch Altheim Myers PC
14 Wall Street, 22nd Floor
New York, New York 10005
Pittsburgh, Pennsylvania.

J:\LITIGATION\195 Hudson - Sponsor\Pleadings\Supplemental Summons.wpd

KALLEN & LEMELSON CONSULTING ENGINEERS, LLP
a/k/a KALLEN & LEMELSON, LLP
c/o Gogick, Byrne & O'Neill, LLP
11 Broadway Street
Suite 1560
New York, New York.10004

JEFFREY M. BROWN ASSOCIATES, INC.
c/o Rivelis, Pawa & Blum LLP
21 East 40th Street, 14th Floor
New York, New York.  10016

NEVERSINK CONSTRUCTION CORP.
270 Benton Hollow Road
Neversink, New York 12765

NEVERSINK GLASS CORP.,
270 Benton Hollow Road
Neversink, New York 12765

NORTHEAST RESTORATION CORP.,
540 Tiffany Street
Bronx, New York 10474

GONZALEZ CONSTRUCTION, LLC,
290 Lawson Street
Hempsted, New York 11550

MARSHALL COHEN
Stadmauer Bailkin LLP
850 Third Avenue
New York, New York 10022

CHRISTINE MALLOY
275 Greenwich Street
Apartment 8GS / 8HS
New York, New York 10007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
BOARD OF MANAGERS OF THE 195 HUDSON
STREET CONDOMINIUM

                       Plaintiff,                       Index No.  118784/03

                -against-                       **FIRST AMENDED**
                                                     **AND SUPPLEMENTAL**
                                                         **VERIFIED**
                                                       **COMPLAINT**

195 HUDSON STREET ASSOCIATES, LLC, 195
HUDSON ASSOCIATES, LLC,  STEVEN
BLUMENTHAL,  SYNCHRON ACQUISITION CORP.
K&J CONSTRUCTION CO., LP,
PERFIDO WEISKOPF ARCHITECTS,
KALLEN & LEMELSON CONSULTING ENGINEERS, LLP,
JEFFREY M. BROWN ASSOCIATES, INC., NEVERSINK
CONSTRUCTION CORP., NEVERSINK GLASS CORP.,
NORTHEAST RESTORATION CORP., GONZALEZ
CONSTRUCTION, LLC, MARSHALL COHEN
and CHRISTINE MALLOY,
                              Defendants.
------------------------------------------------------------------X

        Plaintiff, the BOARD OF MANAGERS OF THE 195 HUDSON STREET

CONDOMINIUM ("Condo" or "Plaintiff"), by its attorneys, Braverman & Associates, P.C., as and

for its first amended and supplemented verified complaint alleges as follows:

        1.     The BOARD OF MANAGERS (the "Board") manages, operates and

represents plaintiff 195 HUDSON STREET CONDOMINIUM, a condominium association organized

and established pursuant to New York State Real Property Law.

2.    Upon information and belief, defendant 195 HUDSON STREET

ASSOCIATES, LLC ("195 HSA") is a general partnership[1] that was and is the developer and sponsor

of the 195 Hudson Street Condominium, with a principal place of business located at 155 Spring

Street, 2d Floor, New York, New York.

3.    Upon information and belief, defendant 195 HUDSON ASSOCIATES, LLC

("Associates") was and is a domestic limited liability company organized and existing under the laws of

the State of New York, with a principal place of business located at 155 Spring Street, 2d Floor, New

York, New York.

4.    Upon information and belief, defendant STEVEN BLUMENTHAL

("Blumenthal") is an individual residing and doing business in the City and State of New York.

5.    Upon information and belief, defendant Blumenthal was and is a principal

and/or partner of 195 HSA and Associates.

6.    Upon information and belief, defendant CHRISTINE MALLOY ("Malloy") is

an individual residing and doing business in the City and State of New York, who is a partner in 195

HSA and at all times hereinafter mentioned had an ownership interest in 195 HSA.

7.    Upon information and belief, defendant MARSHALL COHEN ("Cohen") is

an individual residing and doing business in the City and State of New York, who is a partner in 195

HSA and at all times hereinafter mentioned had an ownership interest in 195 HSA.

---

[1] There are no articles of organization for an entity known as 195 HUDSON STREET
ASSOCIATES, LLC, a purported limited liability corporation, on file with the New York Department
of State.

8.      Upon information and belief, defendants Associates, Blumenthal, Cohen and Malloy do business and trade under the name and style of 195 Hudson Street Associates, LLC (Blumenthal, Cohen, Malloy, Associates and 195 HSA are collectively referred to as "Sponsor" herein).

9.      Upon information and belief, defendant SYNCHRON ACQUISITION CORP. ("Synchron") was and is a domestic corporation organized and existing under the laws of the State of New York, with a principal place of business at 155 Spring Street, 2d Floor, New York, New York.

10.     Upon information and belief, defendant K&J CONSTRUCTION CO., LP ("K&J") was and is a domestic limited partnership organized and existing under the laws of the State of New York, with a principal place of business at 330 Seventh Avenue, New York, New York.

11.     Upon information and belief, defendant GONZALEZ CONSTRUCTION, LLC ("Gonzalez") is a limited liability company organized and existing under the laws of the State of New York.

12.     Upon information and belief, Gonzalez is the general partner of K&J.

13.     Upon information and belief, defendant PERFIDO WEISKOPF ARCHITECTS ("Architect" or "Weiskopf") was and is a business entity organized and existing under the laws of the State of Pennsylvania, with a principal place of business at 408 Boulevard of the Allies, Pittsburgh, Pennsylvania, and is or was doing business in the city and state of New York at all times made reference to herein.

-3-

14.    Upon information and belief, defendant KALLEN & LEMELSON
CONSULTING ENGINEERS, LLP a/k/a KALLEN & LEMELSON, LLP ("Engineer" or "K&L")
was and is a domestic limited liability partnership organized and existing under the laws of the State of
New York, with a principal place of business at 520 Eighth Avenue, New York, New York.

15.    Upon information and belief, defendant JEFFREY M. BROWN
ASSOCIATES, INC. ("BROWN") was and is a business entity organized and existing under the laws
of the State of Pennsylvania, with a principal place of business at 2337 Philmont Avenue, Huntington
Valley, Pennsylvania, and is doing business in the city and state of New York with an office located at
330 Seventh Avenue, New York, New York.

16.    Upon information and belief, defendant NEVERSINK CONSTRUCTION
CORP. ("Neversink") was and is a domestic corporation organized and existing under the laws of the
State of New York, with a principal place of business at 270 Benton Hollow Rd., Neversink, New
York.

17.    Upon information and belief, defendant NEVERSINK GLASS CORP. was
and is a domestic corporation organized and existing under the laws of the State of New York, with a
principal place of business at 270 Benton Hollow Rd., Neversink, New York.

18.    Upon information and belief, NEVERSINK GLASS CORP is the successor
corporation to NEVERSINK CONSTRUCTION CORP.

19.    Upon information and belief, defendant NORTHEAST RESTORATION
CORP. ("Northeast") was and is a domestic corporation organized and existing under the laws of the

State of New York, with a principal place of business in the City and State of New York, County of Bronx

20.    The 195 Hudson Street Condominium is located at 195 Hudson Street, New York, New York (the "Building").

21.    Upon information and belief, on or about April 28, 1999, the Sponsor caused a condominium declaration ("Declaration") to be recorded, thereby establishing a plan for condominium ownership of the Building.

22.    Upon information and belief, the Sponsor contracted with defendant PERFIDO & WEISKOPF ARCHITECTS to perform architectural services in connection with the "gut rehabilitation" and conversion of the Building to condominium ownership (the "Construction Project").

23.    Upon information and belief, the Sponsor contracted with defendant KALLEN & LEMELSON, LLP to perform engineering services in connection with the "gut rehabilitation" and conversion of the Building to condominium ownership.

24.    Upon information and belief, the Sponsor entered into a contract with K&J CONSTRUCTION CO., LP in connection with the "gut rehabilitation" and conversion of the Building to condominium ownership.

25.    Upon information and belief, K&J is a related business entity to defendant JEFFREY M. BROWN ASSOCIATES, INC.

26.    Upon information and belief, BROWN and K&J share an office at 330 Seventh Avenue, New York, New York.

27.     Upon information and belief, representatives and/or employees of BROWN, including but not limited to Louis Della-Peruta ("Della-Peruta"), were the project managers and supervisors of the construction activities undertaken on the Construction Project at 195 Hudson Street, New York, New York.

28.     Upon information and belief, representatives and/or employees of BROWN had the responsibility to supervise, manage and inspect the work performed for the Construction Project, and to issue contracts, buy contracts, negotiate contracts, administer the job from its inception through construction and to approve requisitions, submit change orders for approval by the Sponsor, the Architect, the general contractors, as well as the subcontractors.

29.     Upon information and belief, Della Peruta, and/or others, reported to other employees and representatives of BROWN, including, but not limited to, Andy Tomling and Andy Alt.

30.     Upon information and belief, construction activities commenced in 1998 and have yet to be completed and the work corrected.

31.     Upon information and belief, certain change orders for work performed on the Construction Project were submitted by BROWN to Blumenthal and/or the Architect.

32.     Upon information and belief, K&J performed construction management duties on the Construction Project.

33.     Upon information and belief, K&J was the general contractor on the Construction Project that entered into various subcontracts for the Construction Project Work.

34.    Upon information and belief, employees of Synchron, including defendant Malloy, also coordinated construction and/or administrative activities on behalf of the Sponsor in addition to the Sponsor's direct involvement in the Construction Project.

35.    Upon information and belief, defendant NEVERSINK CONSTRUCTION CORP. manufactured and supplied the windows and terrace doors for the Construction Project.

36.    Upon information and belief, defendant NEVERSINK CONSTRUCTION CORP. installed windows and terrace doors for the Construction Project

37.    Upon information and belief, defendant NORTHEAST RESTORATION CORP. performed work on the Construction Project, including, but not limited to masonry, roofing and sheet metal installation work.

38.    On or about June 1999, owners of the units began moving into the building while they completed their interior loft construction.

39.    In August 2000, the plaintiff Board retained the engineering firm of FSI Consulting Group ("FSI") for the purpose of evaluating and reporting on the Construction Project and to uncover any construction deficiencies and defects.

40.    FSI compared the work completed at or about that time, with the scope of work as agreed upon to be performed at the Construction Project.

41.    The evaluation performed by FSI uncovered 391 items that were not completed or were completed in a defective and/or deficient manner. (A copy of the FSI report is annexed hereto as Exhibit A)

42.    The life safety defects and deficiencies identified by FSI included, but are not limited to, the failure of Sponsor to install or correct numerous life safety items, such as fire dampers, exit signs,  an operating carbon monoxide system in the garage, corridor lighting, emergency lighting, firestopping in walls, complete garage sprinkler system, plumbing vent in fire stairwell, and the fire door hardware was missing.[2]

43.    The other substantial defects and deficiencies identified by the FSI investigation included, but are not limited to:

a)    An inadequate heating system with undersized risers, undersized heaters, improperly piped and sized pumps, crossed risers, and missing approximately one third of the radiators necessary to heat the loft apartments ("Apartments");[3]

b)    The failure to install a fresh air system which conveys fresh air into the Apartments, resulting in a negative air flow that pulls cold air into the Apartments;

c)    The failure to install 200 amp 3-phase electrical service into a 40 breaker rated box to each of the Apartments;

d)    The failure to install kitchen exhaust ductwork sufficient to meet the needs of the proposed owner kitchens -- duct work is sized for a small bathroom fan, not a kitchen exhaust system;

e)    The failure to install a domestic hot water system that provides hot water to all of the lofts within several minutes, instead of the current 15 to 20 minutes;

---

[2]    At the time of the FSI investigation, there were [20] families residing in the building

[3]    This resulted in the loft apartments being only  62 degrees in the winter and Sponsor buying approximately 100 electric heaters for distribution to the owners in a futile attempt to remain warm in winter.

f)    The failure to provide a correctly designed domestic hot water system and the installation of an improper system that presently requires replacement of the majority of the system due to improper piping, connections, tanks and valves;

g)    The failure to install windows that provide thermal insulation to the building sufficient to meet the NYS Energy Code and which are improper for the heating and cooling of a residential space;

h)    The failure to install the specified roof system or provide any warranty on the defective and deficient inferior system installed;

i)    The failure to install a toilet exhaust system which complies with NYC Building Code;

j)    The failure to install adequate piping and pumps in the condenser water system to provide sufficient pressure to use all air conditioning units;

k)    The failure to install wood burning fireplaces that draft safely and properly;

l)    The failure to install a video intercom to lobby and garage;

m)    The failure to repair the façade of the Building.

44.    FSI initially estimated the cost of correction/completion to be over $4,000,000.00.

45.    After the evaluation by FSI, over the course of the next year, new construction and design defects and deficiencies were discovered and brought to the attention of the Board.

46.    Specifically, substantial latent defects and deficiencies were discovered with respect to the fireplaces, windows and the facade of the Building. (A copy of the Wittenstein report of construction defects is annexed hereto as Exhibit B).

47.    Defendant K&L issued its own evaluation of certain construction defects, by

letter dated January 16, 2001. (A copy of the January 16, 2001 report of construction defects is
annexed hereto as Exhibit C).

48.    The current cost for the work necessary to correct and complete this
Construction Project is estimated to be not less than $5,000,000.00.

49.    The design, construction, management and/or supervision of construction and
rehabilitation of the Building were not performed in a proper and workmanlike manner.

50.    Upon the sale and transfer of the condominium units to the unit owners, the
Sponsor's right, title and interest in the Condo ceased.

51.    At such time, the Sponsor should have delivered and assigned to the Board the
right to proceed under the warranties and other undertakings received by the Sponsor from
contractors, suppliers or others in connection with the Construction Project.

52.    The Sponsor failed to assign and deliver the warranties, undertakings,
construction contracts and agreements to the Board.

## AS AND FOR THE CONDO'S FIRST CAUSE OF ACTION
## (AGAINST 195 HSA, ASSOCIATES, SYNCHRON,
## COHEN, MALLOY AND BLUMENTHAL)

53.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"
through "52" with the same force and effect as if fully set forth at length herein.

54.    Upon information and belief, the Sponsor and/or Synchron has made claims
and commenced proceedings against the Architect, Engineer, Brown, K&J and others concerning the
substantial design and construction defects occurring on the Construction Project.

55.    In the event that the Sponsor and/or Synchron recover monetary damages from

the Architect, Engineer and/or any contractor(s) and/or suppliers, for liabilities arising out of the

Construction Project, they will be unjustly enriched at the expense of the Board and the individual unit

owners.

56.     In equity and good conscience, said compensation and damages received by

the Sponsor and/or Synchron should be applied to the substantial construction defects and deficiencies

that exist at the Building and have yet to be corrected and/or repaired.

57.     Therefore, Plaintiff respectfully requests that a constructive trust be imposed on

any and all monies and compensation received by the Sponsor and/or Synchron in connection with the

claims, proceedings and/or litigation arising out of the subject construction , design and supply contracts

for the Construction Project.

### AS AND FOR THE CONDO'S SECOND CAUSE OF ACTION
### (AGAINST 195 HSA, ASSOCIATES, SYNCHRON,
### COHEN, MALLOY AND BLUMENTHAL)

58.     The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

59.     By reason of causing or permitting the foregoing design and construction

defects, deficiencies and uncompleted items, the Sponsor has breached its obligations under the

Condominium's governing documents, including the Offering Plan.

60.     The Sponsor has failed to ensure that the construction work was performed in

accordance with the requirements set forth in the Condominium's governing documents and/or generally

accepted construction standards for buildings of a similar class.

61.     The Sponsor has failed to correct, repair and replace the improper

workmanship and construction defects as required by the Condominium's governing documents and/or

generally accepted construction standards for buildings of a similar class.

62.    The Sponsor has failed to deliver, assign or otherwise grant the Condominium's

Board the assignable warranties and other undertakings received, or to have been received, by the

Sponsor from contractors, suppliers, or others in connection with the construction and equipping of the

Building, and to assign to each Unit purchaser the warranties and undertakings received, or to have

been received, by the Sponsor relating to any or all of the foregoing appliances, equipment or fixtures

located in the Units and the Common Areas.

63.    By reason of the foregoing breaches, the Board, on behalf of the condominium

association and its unit owners, has or will sustain damage for the cost of correcting and completing the

aforementioned construction defects, deficiencies and uncompleted items, and the Condo's inability to

pursue the remedies afforded by said warranties and undertakings.

64.    The foregoing breaches have adversely affected the standard of living of the unit

owners, and the value of the Building as a whole, and have impaired the value of the individual units and

the ability of the unit owners to sell their units.

65.    By reason of the foregoing breaches, Blumenthal, Cohen, Malloy, Associates

and/or 195 HSA are liable to Plaintiff for the cost of correcting and completing these construction

defects in an amount to be determined at trial, but in no event less than $ 5,000,000.00.

### AS AND FOR THE CONDO'S THIRD CAUSE OF ACTION
### (AGAINST 195 HSA, ASSOCIATES, SYNCHRON,
### COHEN, MALLOY AND BLUMENTHAL)

66.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

67.    By reason of causing or permitting the foregoing design and construction

defects, deficiencies and uncompleted items, the Sponsor has breached the common law implied

housing merchant warranty that new homes will be free from construction defects.

68.    By reason of the foregoing design and construction defects, the Board, on

behalf of the condominium association and its unit owners, has or will sustain damage for the cost of

correcting and completing the aforementioned construction defects, deficiencies and uncompleted items.

69.    The design and construction defects have adversely affected the standard of

living of the unit owners, and the value of the Building as a whole, and have impaired the value of the

individual units and the ability of the unit owners to sell their units.

70.    By reason of the foregoing breaches, Blumenthal, Cohen, Malloy, Associates

and/or 195 HSA are liable to Plaintiff for the cost of correcting and completing these construction

defects in an amount to be determined at trial, but in no event less than $ 5,000,000.00.

### AS AND FOR THE CONDO'S FOURTH CAUSE OF ACTION
### (AGAINST 195 HSA, ASSOCIATES, SYNCHRON,
### COHEN, MALLOY AND BLUMENTHAL)

71.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

72.    Upon information and belief, at the time that the Sponsor transferred the title to

the individual condominium units to the unit owners, the Sponsor was aware of the substantial existing

construction defects, incomplete items of construction work, debts owing to contractors on the

Construction Project and other unpaid bills.

73.    Upon the sale and transfer of each condominium unit, the Sponsor entered into and executed a condominium unit deed.

74.    The Sponsor made an express covenant and promise in each condominium unit deed that the "...Grantor will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the same for any other purposes."

75.    The Sponsor received substantial consideration for the sale and transfer of the individual condominium units in an amount that, upon information and belief, totaled approximately $28,000,000.00.

76.    The Sponsor failed to keep and maintain in trust the consideration received upon the sale and transfer of each condominium unit and failed to apply same to the payment of the cost of the condominium improvements, including, but not limited to, the incomplete construction items, unpaid vendors and costs for necessary corrective measures for the construction defects and deficiencies, all in breach of the express covenants contained in the condominium unit deeds.

77.    The Board, on behalf of the condominium association and its unit owners, has or will sustain damages for the aforementioned breaches of the covenants contained in the condominium unit deeds.

78.    The design and construction defects have adversely affected the standard of living of the unit owners and the value of the Building as a whole, and have impaired the value of the individual units and the ability of the unit owners to sell their units.

79.    By reason of the foregoing, Blumenthal, Cohen, Malloy, Associates and/or 195

HSA are liable to Plaintiff in an amount to be determined at trial, but in no event less than

$5,000,000.00.

### AS AND FOR THE CONDO'S FIFTH CAUSE OF ACTION
### (AGAINST 195 HSA, ASSOCIATES, COHEN, MALLOY AND BLUMENTHAL)

80.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

81.    At the time that the Sponsor transferred the title to the individual condominium

units to the unit owners, Sponsor was aware of, or should have been aware of, the substantial existing

construction defects and/or the potential for later discovered construction defects, and the actual and

potential legal claims for said defects and unpaid bills for the Construction Project.

82.    The Sponsor received substantial consideration for the sale and transfer of the

individual condominium units in an amount that, upon information and belief, totaled approximately $28,

000,000.00.

83.    Upon information and belief, 195 HSA and/or the other Sponsor individuals

and/or entities are not solvent any longer.

84.    Upon information and belief, the Sponsor made conveyances of the money

received from the sale of the individual condominium units without fair consideration, rendering the

Sponsor insolvent, to the detriment of the unit owners and other creditors.

85.    Upon information and belief, the Sponsor made conveyances and distributions

of the money received from the sale of the individual condominium units with the intent to defraud

present and future creditors of the Sponsor.

86.     Upon information and belief, the Sponsor made conveyances and distributions of the money received from the sale of the individual condominium units without fair consideration to defendants COHEN, MALLOY, ASSOCIATES, SYNCHRON and BLUMENTHAL, rendering the Sponsor insolvent, to the detriment of the unit owners and other creditors.

87.     Upon information and belief, defendants COHEN, MALLOY, ASSOCIATES, SYNCHRON and BLUMENTHAL, participated in the fraudulent conveyances and distributions of the money received from the sale of the individual condominium units and benefitted as transferees and/or distributees of the funds of the Sponsor.

88.     By reason of the foregoing, Plaintiff seeks the remedies provided under New York's Debtor Creditor law, including: a) seeking to restrain Blumenthal, Associates, Synchron, Malloy, Cohen and/or 195 HSA from disposing of any property transferred to them from Sponsor and currently in their name or under their control; b) seeks an accounting in order to trace assets of the Sponsor; c) seeks the imposition of a trust on transferred/distributed funds from the Sponsor; d) seeks to set aside conveyance(s) and annul any such transactions with the transferee(s) of the Sponsor and the satisfaction of Plaintiff's claims out of the funds or proceeds thereof from said transfers and/or distributions; e) seeks a money judgment against the transferees and/or distributees for any deficiency in said satisfaction of Plaintiff's claims; f) seeks attorney fees in this action to set aside the Sponsor conveyances made with the intent to defraud; g) seeks punitive damages by reason of the defendants knowing participation in the subject fraud; h) together with any other order which the circumstances of this case require.

## AS AND FOR THE CONDO'S SIXTH CAUSE OF ACTION
### (AGAINST 195 HSA, ASSOCIATES, COHEN, MALLOY AND BLUMENTHAL)

89.     The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

90.     At the time that the Sponsor transferred the title to the individual condominium

units to the unit owners, Sponsor was aware of, or should have been aware of, the substantial existing

construction defects and/or the potential for later discovered construction defects.

91.     The unit owners paid substantial sums to purchase their condominium units, for

which the Sponsor received substantial benefit from the sale and transfer of the individual condominium

units in an amount that, upon information and belief, totaled approximately $28,000,000.00.

92.     Due to the failures of the Construction Project, and the substantial construction

defects and incomplete items of construction work, Plaintiff and its unit owners have been left with a

great disparity between the value of what they received and the price paid for the condominium units.

93.     The Sponsor has been unjustly enriched by the disparity between the value of

what the unit owners received and the price paid for the condominium units.

94.     In equity and good conscience, the Sponsor should be required to return and

disgorge the money that constitutes the loss/ disparity in value of the condominium units, and the

individual Sponsor partners should be required to return any and all distributions of money to the

Sponsor.

95.     By reason of the foregoing, the Plaintiff seeks restitution, in an amount to be

determined at trial, but in no event less than $5,000,000.00.

## AS AND FOR THE CONDO'S SEVENTH CAUSE OF ACTION
### (AGAINST THE ARCHITECT, 195 HSA, ASSOCIATES, COHEN, MALLOY AND BLUMENTHAL)

96.     The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

97.     On or about September 2, 2003, Jeffrey J. Wittenstein Architect, P.C.

("Wittenstein") issued a report concerning the investigation of certain latent design and/or construction

defects discovered at the Building. (*See* Exhibit B).

98.     Specifically, Wittenstein confirmed that there are latent defects relating to: a) the

exterior facade, including defects in the brick masonry, mortar joints, window steel lintels, caulking and

cast stone window sills; b) the steel frame windows, including defects in the suitability of the window

units for residential use due to energy loss, thermal breaks and corrosion of the window frames; and c)

the defects and inadequacies of the chimney and fireplace flues.

99.     These latent defects were known, or should have been known, to the Sponsor

and its Architect and these parties had superior knowledge of the defects, having designed and

engineered the conversion of the Building to condominium ownership.

100.    The Sponsor and the Architect knowingly and intentionally proffered  to the

Unit Owners and prospective purchasers an Offering Plan and sales brochures that, *inter alia*

contained the following material misrepresentations pertaining to these latent defects:

a) the windows in the Building would be triple-pane thermal insulating glass;

b) the fireplace units would be properly installed and in compliance with New York

City Code requirements; and

-18-

    c) the exterior masonry was in good condition.

    101.    The Wittenstein Report discloses that these statements by the Sponsor and its Architect are not true and that:

    a) the windows in the Building are not made with triple-pane thermal insulating glass;

    b) the fireplace units have not been properly installed and are not in compliance with New York City Code requirements; and

    c) the exterior masonry is in terrible condition.

    102.    The Sponsor and its Architect knew, or should have known, that these material misrepresentations were false when made, and continued said falsehoods during the sales process by failing to notify the prospective purchasers and unit owners of these defects.

    103.    Said omissions and misrepresentations were made with the intent and purpose of concealing known latent defects in the Building.

    104.    The Unit Owners relied upon said representations when purchasing their Units.

    105.    By reason of the foregoing misrepresentations, the Board, on behalf of the condominium association and its unit owners, have or will sustain damage as a result of these fraudulent misrepresentations and material ommissions.

    106.    By reason of the foregoing, Blumenthal, Associates, Cohen, Malloy and/or 195 HSA and the Architect are liable to Plaintiff for actual and consequential damages in an amount to be determined at trial, but in no event less than $5,500,000.00.

## AS AND FOR THE CONDO'S EIGHTH CAUSE OF
## ACTION (AGAINST THE ARCHITECT,
## THE ENGINEER, K&J AND GONZALEZ)

107.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

108.    Upon information and belief, the contracts entered into between Sponsor and

the Architect, the Engineer and K&J require that the Construction Project be designed, supervised and

engineered properly and constructed in a good and  workmanlike manner, free from construction and

design defects.

109.    By reason of the aforementioned design, supervision and construction defects,

deficiencies and uncompleted items, the Architect, the Engineer and K&J have all breached the terms

of their contracts with the Sponsor.

110.    Upon information and belief, Gonzalez is responsible for the debts and liabilities

of K&J.

111.    The Plaintiff is a third-party beneficiary and/or successor to the each agreement

between the Sponsor: and a) the Architect; b) the Engineer and c) K&J.

112.    The provisions contained in the Offering Plan, as well as the provisions of each

contract between the Sponsor and the Architect, the Engineer and K&J,  make it clear that the unit

owners were intended to the beneficiaries of each of the contracts for the Construction Project in the

Building.

113.    The Board, on behalf of the condominium association and its unit owners, has

or will sustain damages for the aforementioned breaches of contract.

114.    The design and construction defects have adversely affected the standard of living of the unit owners and the value of the Building as a whole, and have impaired the value of the individual units and the ability of the unit owners to sell their units.

115.    By reason of the foregoing, the Architect, the Engineer, K&J and Gonzalez are liable to Plaintiff in an amount to be determined at trial, but in no event less than $ 5,000,000.00.

### AS AND FOR THE CONDO'S NINTH CAUSE OF
### ACTION (AGAINST THE ARCHITECT)

116.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1" through "52" with the same force and effect as if fully set forth at length herein.

117.    The Architect owed a duty to Plaintiff, on behalf of all the unit owners, to design, engineer and supervise the construction of the Construction Project in a proper and workmanlike manner.

118.    By reason of the aforementioned design and construction defects, deficiencies and uncompleted items, the Architect has willfully, recklessly and/or negligently failed to properly design, engineer, construct, supervise and inspect the condominium facilities and premises involved in the Construction Project.

119.    The Architect caused and/or contributed to an unreasonable risk of harm to the unit owners in the failure to supervise and inspect the installation of numerous life safety requirements of the Construction Project.

120.    The unit owners reasonably relied on the Architect's proper performance of the contractual obligations for this Construction Project.

121.    The Architect's role on this Construction Project -- together with its role as

-21-

supervising architect for the Building to review and approve the plans for the build-out of each

individual unit in the Building – was so close as to be the functional equivalent of privity of contract.

123.    The Board, on behalf of the condominium association and its unit owners, has

or will sustain damages proximately caused by the acts and/or failures to act, by Architect.

123.    The design and construction defects have adversely affected the standard of

living of the unit owners, have damaged the property and the value of the Building as a whole, and have

impaired the value of the individual units and the ability of the unit owners to sell their units.

124.    By reason of the foregoing, the Architect is liable to Plaintiff for actual and

consequential damages in an amount to be determined at trial, but in no event less than $5,500,000.00.

AS AND FOR THE CONDO'S TENTH CAUSE OF<br>ACTION (AGAINST THE ARCHITECT)

125.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

126.    The Architect made several representations and certifications to the potential

purchasers of condominium units concerning the physical condition of the Premises as it would exist

upon completion of the renovation and/or Construction Project. (Copies of the Architect's

representation letters are annexed as Exhibit D).

127.    The Architect was aware that said representations and certifications would be

relied upon by the purchasers of condominium units at the Premises.

128.    The nature of the relationship between the Architect and the purchasers of

condominium units was and is such that the purchasers have the right to rely upon the Architect for

correct and accurate information concerning the condition of the Premises and the representations

concerning the renovation and/or construction.

129.    The Architect's role on this Construction Project -- together with its role as supervising architect for the Building to review and approve the plans for the build-out of each individual unit in the Building -- was so close as to be the functional equivalent of privity of contract.

130.    Said certifications and representations -- together with the Architect's duty to speak when the renovation and/or construction does not conform to said certifications and representations -- are material matters that the purchasers relied upon when deciding whether or not to purchase a condominium unit at the Premises.

131.    In addition, after many of the unit owners had purchased their units, the Architect represented in August, 2000 that seven construction items remained incomplete for a total cost of $123,500 to complete the Construction Project. (*See* Exhibit D)

132.    The purchasers in the condominium relied on the certifications and representations of the Architect to their detriment.

133.    In August 2000, the plaintiff Board retained the engineering firm of FSI Consulting Group for the purpose of evaluating and reporting on the Construction Project and to uncover any construction deficiencies and defects.

134.    A report issued by FSI in September, 2000 uncovered 391 construction and construction-related items that were not completed or were completed in a defective and/or deficient manner. (*See* Exhibit A)

135.    FSI initially estimated the cost of correction/completion to be over $4,000,000.00.

136.    In addition, substantial latent defects and deficiencies were discovered with respect to the fireplaces, windows and the facade of the Building by an architect named Jeffrey Wittenstein. (*See* Exhibit B).

137.    The Architect materially misrepresented to the purchasers of condominium units the physical condition of the Premises as it would exist upon completion of the renovation and/or Construction Project, as well as the necessary work to complete the Construction Project and the costs attendant thereto.

138.    In addition, the Architect had a duty to speak when the renovation and/or construction did not conform to said certifications and representations.

139.    By virtue of the Architect's intentional and/or negligent misrepresentations and omissions, the Plaintiff, on behalf of the unit owners, has been damaged in an amount to be determined at trial, but in no event less than $ 5,000,000.00.

## AS AND FOR THE CONDO'S ELEVENTH CAUSE OF ACTION (AGAINST THE ENGINEER)

140.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1" through "52" with the same force and effect as if fully set forth at length herein.

141.    The Engineer owed a duty to Plaintiff, on behalf of all the unit owners, to design, engineer and supervise the construction of the Construction Project in a proper and workmanlike manner.

142.    By reason of the aforementioned design, engineering and construction defects, deficiencies and uncompleted items, the Engineer has willfully, recklessly and/or negligently failed to properly design, engineer, construct, supervise and inspect the condominium facilities and premises

involved in the Construction Project.

143.    The Board, on behalf of the condominium association and its unit owners, has

or will sustain damages proximately caused by the acts and/or failures to act, by the Engineer.

144.    The design, engineering and construction defects have adversely affected the

standard of living of the unit owners, have damaged the property and the value of the Building as a

whole, and have impaired the value of the individual units and the ability of the unit owners to sell their

units.

145.    By reason of the foregoing, the Engineer is liable to Plaintiff for damages in an

amount to be determined at trial, but in no event less than $ 2,000,000.00.

**AS AND FOR THE CONDO'S TWELFTH**
**CAUSE OF ACTION (AGAINST K & J  AND GONZALEZ)**

146.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

147.    K&J owed a duty to Plaintiff, on behalf of all the unit owners, to construct and

supervise the construction of the Construction Project in a proper and workmanlike manner.

148.    By reason of the aforementioned construction defects, deficiencies and

uncompleted items, K&J has willfully, recklessly and/or negligently failed to properly construct,

supervise and inspect the condominium facilities and premises involved in the Construction Project.

149.    The Board, on behalf of the condominium association and its unit owners, has

or will sustain damages proximately caused by the acts and/or failures to act, by K&J.

150.    The construction defects have adversely affected the standard of living of the

unit owners, have damaged the property and the value of the Building as a whole, and have impaired

the value of the individual units and the ability of the unit owners to sell their units.

151.    Upon information and belief, Gonzalez is responsible for the debts and liabilities

of K&J.

152.    By reason of the foregoing, K&J and Gonzalez are liable to Plaintiff for

damages in an amount to be determined at trial, but in no event less than $ 5,500,000.00.

**AS AND FOR THE CONDO'S THIRTEENTH
CAUSE OF ACTION (AGAINST BROWN)**

153.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

154.    Upon information and belief,  agents and employees of BROWN, including

Louis Della Peruta, were the project managers and supervisors of the construction activities undertaken

on the Construction Project at 195 Hudson Street, New York, New York.

155.    Upon information and belief, Della Peruta, and/or others, reported to other

employees of BROWN.

156.    Upon information and belief, the employees of Brown that performed

substantial managerial and supervisory duties on the Construction Project, were paid by Brown, and, in

turn, Brown was paid by K&J for these construction management services.

157.    BROWN thereby undertook and owed a duty to Plaintiff,  to properly

supervise, inspect and ensure that the Construction Project was performed in  a proper and

workmanlike manner.

158.    Brown's duty of care is based on Brown's status in its contractual relationship

(be it oral or written) between Brown and K&J, or Brown's status as a volunteer.

159.    Brown was obligated to perform its duties in a way that did not cause injury to forseeable third parties such as the purchasers of the condominium units.

160.    By reason of the aforementioned design and construction defects, deficiencies and uncompleted items, BROWN has willfully, recklessly and/or negligently failed to properly construct, supervise and inspect the condominium facilities and premises involved in the Construction Project.

161.    The Board, on behalf of the condominium association and its unit owners, has or will sustain damages proximately caused by the acts and/or failures to act, by BROWN, its agents and employees.

162.    The construction defects have adversely affected the standard of living of the unit owners, have damaged the property and the value of the Building as a whole, and have impaired the value of the individual units and the ability of the unit owners to sell their units.

163.    By reason of the foregoing, BROWN is liable to Plaintiff for damages in an amount to be determined at trial, but in no event less than $ 5,500,000.00.

### AS AND FOR THE CONDO'S FOURTEENTH
### CAUSE OF ACTION (AGAINST NEVERSINK)

164.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1" through "52" with the same force and effect as if fully set forth at length herein.

165.    Upon information and belief, defendant NEVERSINK CONSTRUCTION CORP. manufactured and supplied the windows and terrace doors for the Construction Project.

166.    Upon information and belief, defendant NEVERSINK CONSTRUCTION CORP. installed windows and terrace doors for the Construction Project.

-27-

167.   Upon information and belief, defendant NEVERSINK GLASS CORP. is the successor to the debts and obligations of NEVERSINK CONSTRUCTION CORP.

168.   Defendant NEVERSINK CONSTRUCTION CORP. manufactured and produced a defective window product for the Construction Project in that the manufacturing and fabrication of the windows and terrace doors was done in such a poor and negligent manner as to cause the Plaintiff unit owners to experience cold drafts and considerable heat loss in winter, window glass breakage, serious corrosion of the steel frames of the windows, inoperable sashes, doors and other defects.

169.   In addition, the manufacturing and fabrication of the windows was done in a poor and negligent manner because the window units are not triple glazed insulated units and do not contain a thermal break.

170.   The manufacturing and fabrication of the windows was done in a poor and negligent manner that the windows and terrace doors are not fit for the purpose intended.

171.   The installation of the windows was done in a poor and negligent manner that the windows and terrace doors are not fit for the purpose intended.

172.   Neversink knew, or should have known, of the defects in the window units.

173.   As a result of the foregoing defects and omissions, the Plaintiff on behalf of the unit owners has suffered injuries in the form of property damage.

174.   The defects and deficiencies of the window units are a substantial factor in Plaintiffs' property damage, and is the proximate cause of said property damage.

175.   By reason of the aforementioned design and manufacturing defects and

deficiencies, the Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $ 900,000.00.

**AS AND FOR THE CONDO'S FIFTEENTH**
**CAUSE OF ACTION (AGAINST NEVERSINK)**

176.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1" through "52" with the same force and effect as if fully set forth at length herein.

177.    Upon information and belief, defendant NEVERSINK CONSTRUCTION CORP. manufactured and supplied the windows and terrace doors for the Construction Project.

178.    Upon information and belief, defendant NEVERSINK CONSTRUCTION CORP. installed windows and terrace doors for the Construction Project.

179.    Upon information and belief, defendant NEVERSINK GLASS CORP. is the successor to the debts and obligations of NEVERSINK CONSTRUCTION CORP.

180.    Defendant NEVERSINK CONSTRUCTION CORP. manufactured and produced a defective window product for the Construction Project in that the manufacturing and fabrication of the windows was done in such a poor and negligent manner as to cause the Plaintiff unit owners to experience cold drafts and considerable heat loss in winter, window glass breakage, serious corrosion of the steel frames of the windows, inoperable sashes, doors and other defects.

181.    In addition, the manufacturing and fabrication of the windows and doors was done in a poor and negligent manner because the window units and terrace doors are not triple glazed insulated units and do not contain a thermal break.

182.    The manufacturing and fabrication of the windows was done in a poor and negligent manner that the windows and terrace doors are not fit for the purpose intended.

183.    Upon information and belief, Defendant NEVERSINK CONSTRUCTION CORP. has warranted that the window units and terrace doors are of good and merchantable quality and that they were fit for the particular purpose for which the window units were required and intended.

184.    The Plaintiff is the third party beneficiary to said representations and warranties.

185.    Said window units and terrace doors are not of good and merchantable quality and are unfit for the particular purpose required so as to breach such warranty as expressed or implied in the purchase of said window units.

186.    As a result of the foregoing, the Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $ 900,000.00.

### AS AND FOR THE CONDO'S SIXTEENTH
### CAUSE OF ACTION (AGAINST NORTHEAST)

187.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1" through "52" with the same force and effect as if fully set forth at length herein.

188.    Northeast owed a duty to Plaintiff, on behalf of all the unit owners, to construct and supervise the construction of the Construction Project in a proper and workmanlike manner.

189.    By reason of the aforementioned construction defects, deficiencies and uncompleted items, Northeast has willfully, recklessly and/or negligently failed to properly construct, supervise and inspect the condominium facilities and premises involved in the Construction Project.

190.    The Board, on behalf of the condominium association and its unit owners, has or will sustain damages proximately caused by the acts and/or failures to act, by Northeast.

191.    The construction defects have adversely affected the standard of living of the unit owners, have damaged the property and the value of the Building as a whole, and have impaired

-30-

the value of the individual units and the ability of the unit owners to sell their units.

192.    By reason of the foregoing, Northeast is liable to Plaintiff for damages in an

amount to be determined at trial, but in no event less than $ 850,000.00.

### AS AND FOR THE CONDO'S SEVENTEENTH CAUSE OF ACTION
### (AGAINST K&J AND GONZALEZ)

193.    The Plaintiff repeats and realleges the allegations contained in Paragraphs "1"

through "52" with the same force and effect as if fully set forth at length herein.

194.    Upon information and belief, the contract entered into between Sponsor and

K&J require that the Construction Project be supervised and constructed in a good and  workmanlike

manner, free from construction and design defects.

195.    By reason of the aforementioned supervision and construction defects,

deficiencies and uncompleted items, K&J has breached the terms of its contract with the Sponsor.

196.    Upon information and belief, Gonzalez is responsible for the debts and liabilities

of K&J.

197.    The Plaintiff is a third-party beneficiary and/or successor to the agreement

between the Sponsor and K&J.

198.    At the time that the Sponsor transferred the title to the  individual condominium

units to the unit owners, K&J was aware of, or should have been aware of,  the substantial existing

construction defects and/or the potential for later discovered construction defects, and the actual and

potential legal claims for said defects and unpaid bills for the Construction Project.

199.    Upon information and belief, K&J received substantial compensation for work

performed on the Construction Project, as well as from other construction projects performed by K&J.

200.    Upon information and belief, K&J is not solvent any longer.

201.    Upon information and belief, the K&J made conveyances of the money received from the Sponsor and others pursuant to its contract without fair consideration, rendering K&J insolvent, to the detriment of the unit owners and other creditors.

202.    Upon information and belief, K&J made conveyances and distributions of the money received from the Sponsor with the intent to defraud present and future creditors of K&J.

203.    By reason of the foregoing, Plaintiff seeks the remedies provided under New York's Debtor Creditor law, including: a) seeking to restrain K&J and Gonzalez from disposing of any property transferred to them from Sponsor or others and currently in their name or under their control; b) seeks an accounting in order to trace assets of K&J; c)  seeks the imposition of a trust on transferred/distributed funds from K&J ; d) seeks to set aside conveyance(s) and annul any such transactions with the transferee(s) of K&J and the satisfaction of Plaintiff's claims out of the funds or proceeds thereof from said transfers and/or distributions; e) seeks a money judgment against the transferees and/or distributees for any deficiency in said satisfaction of Plaintiff's claims; f)  seeks attorney fees in this action to set aside K&J's conveyances made with the intent to defraud; g) seeks punitive damages by reason of the defendants knowing participation in the subject fraud; h) together with any other order which the circumstances of this case require.


WHEREFORE, the Plaintiff demands judgment on its causes of action as follows:

a)    On the First Cause of Action, the imposition of a constructive trust on any and all monies recovered by the Sponsor relating to design and construction defects on the subject Construction

Project;

  b) On the Second Cause of Action, damages in the sum of not less than $5,000,000.00, together with such other damages as shall be determined at the time of trial;

  c) On the Third Cause of Action, damages in the sum of not less than $5,000,000.00, together with such other damages as shall be determined at the time of trial;

  d) On the Fourth Cause of Action, damages in the sum of not less than $5,000,000.00, together with such other damages as shall be determined at the time of trial;

  e) On the Fifth Cause of Action: i) an order to restrain Blumenthal, Associates, Malloy, Cohen and/or 195 HSA from disposing of any property transferred to them from Sponsor and currently in their name or under their control; ii) the imposition of a trust on transferred/distributed funds from the Sponsor; iii) an accounting in order to trace assets of the Sponsor; iv) the setting aside of conveyance(s) and annulment of any such transactions with the transferee(s) of the Sponsor and the satisfaction of Plaintiff's claims out of the funds from said transfers and/or distributions; v) a money judgment against the transferee and/or distributees for any deficiency in said satisfaction of Plaintiff's claims; vi) attorney fees in this action to set aside the Sponsor conveyances made with the intent to defraud; vii) punitive damages by reason of the defendants knowing participation in the subject fraud; viii) together with any other order which the circumstances of this case require.

  f) On the Sixth Cause of Action, damages in the sum of not less than $5,000,000.00, together with such other damages as shall be determined at the time of trial;

  g) On the Seventh Cause of Action, damages in the sum of not less than $5,500,000.00, together with such other damages as shall be determined at the time of trial;

h)    On the Eighth Cause of Action, damages in the sum of not less than $5,000,000.00, together with such other damages as shall be determined at the time of trial;

i)    On the Ninth Cause of Action, damages in the sum of not less than $5,500,000.00, together with such other damages as shall be determined at the time of trial;

j)    On the Tenth Cause of Action, damages in the sum of not less than $5,000,000.00, together with such other damages as shall be determined at the time of trial;

k)    On the Eleventh Cause of Action, damages in the sum of not less than $2,000,000.00, together with such other damages as shall be determined at the time of trial;

l)    On the Twelfth Cause of Action, damages in the sum of not less than $5,500,000.00, together with such other damages as shall be determined at the time of trial;

m)    On the Thirteenth Cause of Action, damages in the sum of not less than $5,500,000.00, together with such other damages as shall be determined at the time of trial;

n)    On the Fourteenth Cause of Action, damages in the sum of not less than $900,000.00, together with such other damages as shall be determined at the time of trial;

o)    On the Fifteenth Cause of Action, damages in the sum of not less than $900,000.00, together with such other damages as shall be determined at the time of trial;

p)    On the Sixteenth Cause of Action, damages in the sum of not less than $850,000.00, together with such other damages as shall be determined at the time of trial;

q)    On the Seventeenth Cause of Action: i) an order to restrain Blumenthal, Associates, Malloy, Cohen and/or 195 HSA from disposing of any property transferred to them from Sponsor or others and currently in their name or under their control; ii) the imposition of a trust on

-34-

transferred/distributed funds from the Sponsor; iii) an accounting in order to trace assets of the

Sponsor; iv) the setting aside of conveyance(s) and annulment of any such transactions with the

transferee(s) of the Sponsor and the satisfaction of Plaintiff's claims out of the funds from said transfers

and/or distributions; v) a money judgment against the transferee and/or distributees for any deficiency in

said satisfaction of Plaintiff's claims; vi) attorney fees in this action to set aside the Sponsor

conveyances made with the intent to defraud; vii) punitive damages by reason of the defendants

knowing participation in the subject fraud; viii) together with any other order which the circumstances of

this case require.

r)   Interest, costs and disbursements incurred in connection with this action; and

s)   Such other and further relief as the Court deems just and proper.


Dated:        New York, New York
              February 9, 2004

                              BRAVERMAN & ASSOCIATES, P.C.

                              By: _____
                                  Edward T. Braverman
                              Attorneys for Plaintiff
                              Office and P.O. Address
                              331 Madison Avenue
                              New York, New York 10017
                              (212) 682-2900

## VERIFICATION

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

Lynn Fisher Hill, being duly sworn, deposes and says:

I am a member of the Board of Managers of the 195 Hudson Street Condominium, the Plaintiff in this action. I have read the foregoing FIRST AMENDED AND SUPPLEMENTAL VERIFIED COMPLAINT and know the contents thereof and the same are true to my own knowledge and as to those matters therein stated to be upon information and belief I believe these matters to also be true.

_____
Lynn Fisher Hill

Sworn to before me this
_9th_ day of February, 2004

_____
Notary Public

REHMAN MUHAMMAD
Notary Public, State of New York
No. 24-4981100
Qualified in Kings County
Commission Expires _5/6/07_

F:\195 Hudson Condo\195 Hudson Street Associates, et al CTN IP\First Amended Verified Complaint.wpd