UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOARD OF MANAGERS OF THE 195
HUDSON STREET CONDOMINIUM,

      Plaintiff,

 - against -

JEFFREY M. BROWN ASSOCIATES,
INC. and LEXINGTON INSURANCE
COMPANY,

      Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8|25|09

## OPINION AND ORDER

07 Civ. 4058 (PKL)

**APPEARANCES**

JUDD BURSTEIN P.C.
Peter B. Schalk, Esq.
Alexander M. Levy, Esq.
1790 Broadway, Suite 1501
New York, NY  10019

Attorneys for Plaintiff

RIVELIS, PAWA & BLUM, LLP
Howard Blum, Esq.
286 Madison Avenue, 14th Floor
New York, NY  10017

Attorneys for Defendant Jeffrey M. Brown Associates, Inc.

**LEISURE, District Judge**:

Plaintiff Board of Managers of the 195 Hudson Street Condominium (the "Board"), a manager and operator of a condominium association, filed this action premised on diversity jurisdiction on May 23, 2007.  The Board seeks a declaration that it is entitled to recover from defendant Jeffrey M. Brown Associates ("JMB") an outstanding state court judgment against non-party K&J Construction Co., L.P. ("K&J") under an alter-ego theory of corporate veil-piercing.  JMB moves to dismiss the complaint against it under Federal Rule of Civil Procedure 12(b).  JMB contends that plaintiff's alter-ego claim against it is barred on the grounds of res judicata, collateral estoppel, and/or the Rooker-Feldman doctrine, based upon prior decisions rendered by the Supreme Court of the State of New York, New York County.  For the following reasons, JMB's motion is GRANTED.

**BACKGROUND**

For purposes of this motion, well-pleaded allegations set forth in plaintiff's complaint are accepted as true, and all plausible inferences are drawn in plaintiff's favor.  The Court has also reviewed documents of which the Court may take judicial notice.

This action arises out of a condominium construction project located at 195 Hudson Street, New York, New York ("195 Hudson Street"). 195 Hudson Street is a residential loft

1

building that was previously used for industrial purposes.
(Compl. ¶ 6.)  Pursuant to a written contract with non-party
condominium sponsor 195 Hudson Street Associates, LLC (the
"Sponsor"), K&J served as construction manager on the project
converting 195 Hudson Street from industrial to residential use.
(Id. ¶ 7.)  JMB formed K&J in 1998 for the purpose of performing
non-union construction work in New York City. (Id. ¶ 8.)

I.    State Court Proceedings

On May 23, 2000, Northeast Restoration Corp. ("Northeast"),
a subcontractor on the conversion project, brought suit against
K&J, the Sponsor, and the Sponsor's insurer in the Supreme Court
of the State of New York, New York County, demanding payment for
work, labor, and services performed on the conversion project,
and seeking to foreclose on a mechanic's lien filed against 195
Hudson Street. (See Compl. filed in Index No. 602171/00,
included herein as Def.'s Ex. 3.[1])  On December 11, 2001, the
state court granted partial summary judgment in favor of the
Sponsor and its insurer, vacating and canceling the mechanic's
lien and dismissing the action to foreclose on the mechanic's
lien. (See Ne. Restoration Corp. v. K&J Constr. Co., L.P., No.
118784/03, Dec. 11, 2001 Mem. Decision, included herein as

---

[1] All citations to "Defendant's Exhibits" refer to documents attached to
defendant's Affidavit in Support of Motion, sworn to by Howard Blum, Esq. on
July 30, 2007.  All citations to "Plaintiff's Exhibits" refer to documents
attached to the Declaration of Alexander M. Levy, Esq., executed on August
30, 2007.

Def.'s Ex. 4.)  The court's decision also directed Northeast to
proceed under New York real estate trust fund law to recover
amounts it was allegedly owed.[2]  (Id. at 7.)

On February 19, 2002, Northeast filed a new suit against
JMB, the Sponsor, and the Board in the Supreme Court of the
State of New York, New York County (the "Northeast Litigation"),
seeking to recover payment from (i) the Sponsor or Board via a
statutory real estate trust fund, or (ii) from JMB under an
alter-ego theory. (See Compl. filed in Index No. 600664/02,
included herein as Def.'s Ex. 6.)  Specifically, Northeast
claimed that "[JMB] dominated and controlled the business and
financial affairs of K&J, thereby rendering K&J the mere
instrumentality and alter ego of [JMB]." (Id. ¶ 23.)  In support
of its corporate veil-piercing claim, Northeast alleged that K&J
was a wholly-owned subsidiary of JMB, and that the two entites
shared an office and overlapped in ownership, officers,
directors, and personnel. (Id. ¶ 22.)  Northeast futher alleged
that "[JMB's] domination and control over K&J resulted in K&J's
wrongful failure and refusal to pay Northeast . . . $168,057,
which domination and control was for [JMB's] own financial
benefit" (id. ¶ 27) and unjust enrichment (id. ¶ 32).  The Board
asserted cross-claims against JMB for common law indemnification

---

[2] The remaining claims against K&J were consolidated with the second action
filed by Northeast, Index No. 600664/02, described below, under Index No.
602171/00. (See Pl.'s Mem. 6.)

3

and contribution in the event that the Board was found liable to Northeast. (See V. Answer Compl., sworn to on June 11, 2002, included herein as Pl.'s Ex. C, ¶¶ 20-21.) JMB did not file or serve a reply to the cross-claims. (See Answer of Brown, entered on Feb. 21, 2003, included herein as Pl.'s Ex. E.)

JMB moved to dismiss pursuant to N.Y. C.P.L.R. § 3211(a)(1). (See Ne. Restoration Corp. v. K&J Constr. Co., L.P., Index Nos. 602171/00, 600664/02, Feb. 11, 2003 Order, entered on Feb. 13, 2003, included herein as Def.'s Ex. 8 ("Def.'s Ex. 8") at 1.) On February 11, 2003, Justice Edward Lehner converted JMB's motion to dismiss to a motion for summary judgment, granted summary judgment in favor of JMB, and severed the action against the other defendants. (See id. at 1.) Justice Lehner found that Northeast failed to raise a triable issue on its alter-ego theory, "as [Northeast] has not shown any misuse of the corporate form by [JMB] so as to warrant a piercing of the corporate veil and deprive it of the privilege of doing business as a separate corporation from its subsidiary." (Id. at 2.) Judgment was entered on April 8, 2003. (See Pl.'s Ex. F.) Subsequently, on May 4, 2004, Justice Lehner granted summary judgment in favor of the Board and the Sponsor on the statutory trust fund claim, and dismissed the complaint against them. See Ne. Restoration Corp. v. K&J Constr. Co.,

4

L.P., Index No. 602171/00, 4 Misc. 3d 197, 776 N.Y.S.2d 780 (N.Y. Sup. Ct. 2004) (included herein as Pl.'s Ex. H).

On October 29, 2003, the Board commenced an action in the Supreme Court of the State of New York, New York County against, inter alia, the Sponsor, K&J, and JMB in connection with alleged construction defects in the conversion project (the "Conversion Litigation"). (See V. Compl. filed in Index No. 118784/03, included herein as Def.'s Ex. 9 ("Def.'s Ex. 9").) With respect to K&J and JMB, the Board alleged (i) that K&J is "a related business entity" to JMB and that "the two related entities share an office at 330 Seventh Avenue, New York, New York" (id. ¶ 18), (ii) that JMB, as manager and supervisor of the construction activities undertaken on the conversion project, improperly constructed, supervised, and inspected the facilities involved in the construction project and thereby breached a duty of care owed to the Board to ensure the conversion project was performed in a "proper and workmanlike manner" (id. ¶¶ 19, 20, 125, 127), and (iii) that K&J, having contracted with the Sponsor for construction on the conversion project, improperly constructed, supervised, and inspected the facilities involved in the construction project and thereby breached a duty of care owed to the Board to construct and supervise the conversion project in a "proper and workmanlike manner"(id. ¶ 17, 119, 120; see also Compl. ¶ 9).

5

JMB moved to dismiss, asserting (i) collateral estoppel as a defense, to the extent the Board's pleading raised alter-ego allegations, and (ii) that, in the absence of a contractual relationship, JMB owed no duty to the Board. (See Bd. of Managers of the 195 Hudson St. Condo. v. 195 Hudson St. Assocs., LLC, No. 118784/03, June 30, 2004 Order, entered on July 8, 2004, included herein as Def.'s Ex. 10 ("Def.'s Ex. 10") at 1.) In support of its motion to dismiss, JMB submitted an affidavit setting forth facts regarding K&J's separate corporate existence from JMB, arguing that such facts established JMB was not liable for any alleged breaches of contract by K&J. (See JMB's Aff. Supp. Mot., sworn to on Nov. 21, 2003, included herein as Def.'s Ex. 7 ("Def.'s Ex. 7").) Specifically, JMB averred that, although certain employees of JMB worked directly for K&J on the conversion project, JMB billed K&J for those employees, and was reimbursed by K&J for the costs associated with those employees. (Id. at ¶ 20.) JMB also averred that it was not paid by the Sponsor and that there was no contractual relationship between the Sponsor and JMB that would give rise to a duty of care to the Board.[3] (Id.)

On June 30, 2004, Justice Walter Tolub granted JMB's motion to dismiss. (Def.'s Ex. 10 at 1.) Justice Tolub determined that

---

[3] The record before this Court does not include plaintiff's opposition, if any, to JMB's motion to dismiss in the Conversion Litigation.

6

the Board was not a party to (i) the construction management agreement between the Sponsor and K&J or (ii) the oral agreement between JMB and K&J whereby JMB provided employees to K&J. (Id. at 2.)  As a result, the complaint failed "to allege facts that would establish either an agreement that intentionally rendered [the Board] a third-party beneficiary or [that] an exception to the rule that no duty is owed to a non-contracting party applies." (Id. at 2.)  Justice Tolub therefore dismissed the complaint against JMB in its entirety, severed the action against the remaining defendants, and directed the Clerk of Court to enter judgment.[4]  (Id.)

In April 2007, the Board settled its claims against the Sponsor. (Compl. ¶ 10.)  As part of the settlement, the Sponsor assigned its breach of contract claims against K&J to the Board. (Id.)  On May 9, 2007, a jury returned a verdict in favor of the Board on its breach of contract claims against K&J, and awarded

---

[4] Although there is no indication that Justice Tolub granted permission for plaintiff to replead its claims against JMB, the Board filed a First Amended and Supplemental Verified Complaint alleging a Thirteenth Cause of Action against JMB based on JMB's negligent supervision of the conversion project. (See Def.'s Ex. 11 ¶¶ 153-163; Pl.'s Ex. I.)  The First Amended Complaint stated the following additional allegations:  "employees of [JMB] that performed substantial managerial and supervisory duties on the Construction Project were paid by [JMB], and, in turn, [JMB] was paid by K&J for these construction management services;" "[JMB]'s duty of care is based on [JMB]'s status in its contractual relationship (be it oral or written) between [JMB] and K&J, or [JMB]'s status as volunteer;" and "[JMB] was obligated to perform its duties in a way that did not cause injury to foreseeable third parties such as the purchasers of condominium units." (Id. ¶¶ 156, 158, 159.)  The First Amended Complaint is dated February 9, 2004, but it is unclear when it was filed or served.  The Board subsequently filed a Second Amended and Supplemental Verified Complaint that names JMB as defendant but omits any allegations or causes of actions against JMB. (See Def.'s Ex. 12.)

7

the Board over \$2 million in damages. (Id. ¶ 12.) On January 8, 2008, the state court entered judgment in that amount against K&J. See Bd. of Managers of the 195 Hudson St. Condo. v. 195 Hudson St. Assocs., LLC, No. 118784/03, 2009 N.Y. App. Div. LEXIS 4854, at *1 (N.Y. App. Div. June 16, 2009). The Appellate Division, First Department, affirmed the judgment on June 16, 2009. See id.

## II. Instant Litigation

The Board initiated this action against defendants Lexington Insurance Company ("Lexington") and JMB seeking (i) a declaration that, pursuant to a policy Lexington issued to K&J, Lexington is obligated to pay the Board for judgment received in state court against K&J arising out of the conversion project (Compl. ¶¶ 14-21), and (ii) a declaration that JMB is the alter-ego of K&J such that the judgment against K&J for breach of contract may be enforced against JMB (id. ¶¶ 22-29). With regard to JMB, the Board specifically alleges that "JMB dominated K&J so completely that K&J had no separate mind, will or existence of its own," and that such domination was evidenced by, inter alia, the following facts: (i) the Sponsor employed JMB on the conversion project, paying JMB through the "shell" of K&J to reduce costs; (ii) the original oral agreement between the Sponsor and JMB for construction management of the conversion project was entered into a year before K&J was

8

formed, and the Sponsor was billed for over $200,000 in
construction management services rendered prior to K&J's
formation; (iii) at least once, the Sponsor paid K&J through
JMB; (iv) K&J paid JMB at least $437,000 in connection with the
conversion project; (v) K&J's business was conducted and managed
solely by JMB's officers and employees, depriving K&J of "any
discretion with respect to the management of its own affairs;"
(vi) JMB employees supervised K&J's work on the conversion
project and were paid by JMB; (vii) "K&J operated out of JMB's
New York office, using the same mailing address and telephone
number;" and (viii) "[t]here was overlapping ownership of JMB
and K&J." (Id. ¶ 23.)   The Board further asserts that JMB used
its domination and control of K&J to strip K&J of assets,
rendering it judgment-proof, and to "procure[e] K&J's breach of
its contractual obligations to the Sponsor." (Id. ¶ 24.)

**DISCUSSION**

Because JMB raises res judicata, collateral estoppel, and
the Rooker-Feldman doctrine as grounds for its motion to
dismiss, the Court interprets the motion as brought under Rules
12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.
Accordingly, the Court must first address whether the Court
lacks subject matter jurisdiction under the Rooker-Feldman
doctrine before addressing whether the action against JMB is
precluded by prior state court proceedings.

III. Subject Matter Jurisdiction

    A.   Applicable Law

        1.   Rule 12(b)(1) Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (McLaughlin, J.). When considering a Rule 12(b)(1) motion to dismiss, the Court accepts as true all material factual allegations in the complaint but does not draw inferences favorable to plaintiff. Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) ("In considering a motion to dismiss for lack of subject matter jurisdiction, we accept as true all material factual allegations in the complaint. . . . However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." (citations omitted)), abrogated on other grounds by Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc ., 413 F.3d 307 (2d Cir. 2005). "[P]laintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

## 2. Rooker-Feldman Doctrine

JMB's assertion that the Rooker-Feldman doctrine applies, if true, would deprive the Court of subject matter jurisdiction over this case. The Rooker-Feldman doctrine recognizes that district courts cannot act as appellate courts for state courts; Congress has reserved appellate jurisdiction over state court judgments exclusively to the Supreme Court. See Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Four requirements must be met for the Rooker-Feldman doctrine to apply: (1) the federal plaintiff must have lost in the state court; (2) the federal plaintiff must complain of injuries caused by a state court judgment; (3) the federal plaintiff must invite the district court's review and rejection of that state court judgment; and (4) the state court judgment must have been rendered before the federal action commenced. Hoblock v. Albany County Bd. Of Elections, 422 F.3d 77, 85 (2d Cir. 2005); see Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) ("The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). Additional

11

procedural requirements are that the federal suit must follow the state judgment, and the party defeated in state court must share a common identity with the federal plaintiff. Hoblock, 422 F.3d at 89.

According to the Second Circuit's holding in Hoblock, "federal plaintiffs are not subject to the *Rooker-Feldman* bar unless they *complain of an injury* caused by a state judgment." 422 F.3d at 87.  This factor is the "core requirement from which the others derive." Id.  A federal suit complains of an injury from a state judgment "when the third party's actions are produced by the state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Id. at 87-88.

B.   Application

Here, JMB makes the conclusory argument that, because plaintiff is allegedly bound by two prior determinations of the New York Supreme Court in the Northeast Litigation and the Conversion Litigation, "[t]he Rooker-Feldman doctrine clearly governs the instant situation." (Def.'s Mem. 6; see also id. at 5 ("Rooker-Feldman bars the instant Complaint.").)  However, defendant conflates the concepts of preclusion and jurisdiction. See Exxon Mobile, 544 U.S. at 284 ("Preclusion, of course, is not a jurisdictional matter." (citing Fed. R. Civ. P. 8(c) (listing res judicata as an affirmative defense)).  A determination that claims or issues are precluded by prior state

12

court proceedings "does not compel the further conclusion that federal courts lack jurisdiction to consider such claims or issues." Dolan v. Roth, 170 F. App'x 743, 745 (2d Cir. 2006); see also Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) ("[I]ssue preclusion in no way implicates jurisdiction."). JMB's statement of the law is thus erroneous.

Moreover, the key requirement of the Rooker-Feldman doctrine is not satisfied in this case. JMB's actions, as alleged in the complaint, are not the product of the state court judgments. See Hoblock, 422 F.3d at 87-88. Because plaintiff does not complain of injuries caused by the prior state court judgments, the Court holds that the Rooker-Feldman doctrine is not applicable to this case.

IV.   Preclusion

A.   Applicable Law

Defendant also argues that claim and issue preclusion bar the present action against defendant. "[I]t is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion." Sassower v. Abrahams, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) (Leisure, J.) (citations omitted); see Thompson, 15 F.3d at 253 ("*Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." (citations omitted)); Day v. Moscow, 955 F.2d 807, 811 (2d Cir.

13

1992) (finding res judicata challenge properly raised on a 12(b)(6) motion if it is clear from the face of the complaint that plaintiff's claims are barred).

The Constitution's Full Faith and Credit Clause requires a federal court to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. Of Educ., 465 U.S. 75, 81 (1984); accord Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 265 (2d Cir. 1997) (citations omitted); see 28 U.S.C. § 1738.  Thus, a federal court looks to the state's preclusion law to determine the preclusive effect of a state court's judgment. See Allen v. McCurry, 449 U.S. 90, 96 (1980); Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 87 (2d Cir. 2000) (McLaughlin, J.) (citations omitted).  Here, the Court will accord the prior judgments in the Northeast Litigation and Conversion Litigation the same preclusive effect they would have under New York law. See EFCO Corp. v. U.W. Marx, Inc., 124 F.3d 394, 397 (2d Cir. 1997) (McLaughlin, J.) (citations omitted); Newman v. Harmon, 965 F. Supp. 503, 507 (S.D.N.Y. 1997).

### 1.  Rule 12(b)(6) Standard of Review

"On a motion to dismiss, the issue is 'whether the claimant is entitled to offer evidence to support the claims.'" Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam) (quoted

14

reference omitted).  In assessing the sufficiency of plaintiff's complaint, the Court is guided by the Supreme Court's recent decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  The Bell Atlantic Court explained that in order to withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; see Benzman v. Whitman, 523 F.3d 119, 129 (2d Cir. 2008) (stating that a claim not plausible on its face must be "supported by an allegation of some subsidiary facts to survive a motion to dismiss").  In Iqbal, the Supreme Court further explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. at 1949.  "'[N]aked assertion[s]' devoid of further factual enhancement" will not suffice; the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Well-pleaded factual allegations are accepted as true for purposes of determining whether a complaint states a plausible claim for relief. Id. at 1949-50; see Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (Jacobs, J.); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Patane, 508 F.3d at 111.  In adjudicating defendant's

15

Rule 12(b)(6) motion, the Court "confine[s] its consideration to
facts stated on the face of the complaint, in documents appended
to the complaint or incorporated in the complaint by reference,
and to matters of which judicial notice may be taken." Leonard
F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999)
(internal quotation marks and citation omitted); accord Chambers
v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). The
Court may properly "rely on matters of public record in deciding
a motion to dismiss under Rule 12(b)(6), including the public
record of prior judicial decisions." Jordan v. Verizon Corp.,
No. 08 Civ. 6414, 2008 WL 5209989, at *5 (S.D.N.Y. Dec. 10,
2008) (Lynch, J.) (citing Cameron v. Church, 253 F. Supp. 2d
611, 617-18 (S.D.N.Y. 2003)); see Blue Tree Hotel Inv. (Can.),
Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212,
217 (2d Cir. 2004) (stating that courts "may also look to public
records, including complaints filed in state court, in deciding
a motion to dismiss"); Pani v. Empire Blue Cross Blue Shield,
152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a
district court may rely on matters of public record in deciding
a motion to dismiss under Rule 12(b)(6) . . . .").

Here, the factual allegations in defendant's motion are
predicated on proceedings in the Supreme Court for the State of
New York, New York County. Accordingly, in considering
defendant's motion, the Court takes judicial notice of public

16

documents filed in connection with the Northeast Litigation and Conversion Litigation, "not for the truth of the matters asserted . . . , but rather to establish the fact of such litigation and related filings." Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (Winter, J.).[5] Dismissal based on res judicata or collateral estoppel is appropriate where it is clear from the face of the complaint and from matters of which the Court takes judicial notice that plaintiff's claims are barred. Houbigant, Inc. v. Dev. Specialists, Inc., 229 F. Supp. 2d 208, 220 (S.D.N.Y. 2002).

### 2. Res Judicata

Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in the prior action. See Allen, 449 U.S. at 94; Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000)[6] (stating that, to prove the affirmative defense res judicata, a party must show three elements: "(1) the previous

---

[5] The Court thus excludes all other material submitted by the parties in connection with the motion to dismiss. (See Def. Brown's Statement of Uncontroverted Material Facts in Supp. of its Mot. to Dismiss; Pl.'s Exs. B, G; Decl. of Lynn Fisher Hill; Decl. of Sandra Guzman.) Cf. Rule 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

[6] There is no discernable difference between New York and federal law regarding claim preclusion. See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002); Pike v. Freeman, 266 F.3d 78. 90 n.14 (2d Cir. 2001).

17

action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." (citations omitted)); City of New York v. Welsbach Elec. Corp., 9 N.Y.3d 124, 127, 878 N.E.2d 966, 968 (N.Y. 2007) ("One linchpin of res judicata is an identity of parties actually litigating successive actions against each other:  the doctrine applies only when a claim between the parties has been previously 'brought to a final conclusion.'" (quoting Parker v Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 347, 712 N.E.2d 647, 690 (N.Y. 1999)).

New York applies a transactional approach to res judicata, so that a final decision in one action bars all subsequent claims arising out of the same transaction or series of transactions, even if based on different legal theories or seeking a different remedy. See Parker, 93 N.Y.2d at 347, 712 N.E.2d at 690; O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357, 429 N.E.2d 1158, 1159 (N.Y. 1981).  To determine whether particular claims are part of the same transaction, New York courts analyze "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Chen

18

v. Fischer, 6 N.Y.3d 94, 100-01, 843 N.E.2d 723, 725 (N.Y. 2005).

The transactional approach prevents piecemeal litigation, so that a decision is dispositive not only of the theory of recovery alleged, but also of all other theories that might have been cited in support against the same wrong. See O'Brien, 54 N.Y.2d at 357-58, 429 N.E.2d at 1160 ("When alternative theories are available to recover what is essentially the same relief for harm arising out of the same or related facts such as would constitute a single 'factual grouping' . . . , the circumstance that the theories involve materially different elements of proof will not justify presenting the claim by two different actions."); see LaRocco v. Goord, 43 A.D.3d 500, 500, 840 N.Y.S.2d 477, 478-79 (N.Y. App. Div 2007) (stating res judicata bars a party "from bringing additional actions [against] the same part[y] on the same claims based upon the same harm" (citation omitted)); see also Carrols Corp. v. Candy Candy, Inc., 661 N.Y.S.2d 324, 325, 241 A.D.2d 955, 956 (N.Y. App. Div. 1997) (stating a cause of action is not barred by res judicata if judgment in the subsequent action "does not destroy or impair rights or interests established by the judgment in the prior action"). "The policy against relitigation of adjudicated disputes is strong enough generally to bar a second action even where further investigation of the law or facts indicates that

19

the controversy has been erroneously decided, whether due to oversight by the parties or error by the courts." Reilly v. Reid, 45 N.Y.2d 24, 28, 379 N.E.2d 172, 174 (N.Y. 1978).

In addition, the prior judgment need not "contain the precise words 'on the merits' in order to [have] *res judicata* effect; it suffices that it appears from the judgment that the dismissal was on the merits." Strange v. Montefiore Hosp. & Med. Ctr., 59 N.Y.2d 737, 737, 450 N.E.2d 235, 235 (N.Y. 1983); accord QFI, Inc., v. Shirley, 60 A.D.3d 656, 874 N.Y.S.2d 238, 239 (N.Y. App. Div. 2009) (citations omitted)).  Indeed, the Second Circuit has described the locution "on the merits" as having "possibly misleading connotations;" to determine the res judicata effect of a prior claim "requires examination of 'what was intended by the first decision and what the logical consequences of that decision are.'" EFCO, 124 F.3d at 398 (quoted reference omitted); see Smith v. Russell Sage Coll., 445 N.Y.S.2d 68, 72 n.3, 429 N.E.2d 746, 750 n.3 (N.Y. 1981).

### 3.  Collateral Estoppel

The doctrine of collateral estoppel, or issue preclusion, prevents relitigation of an issue of fact or law that has been necessarily decided in a prior proceeding.  Allen, 449 U.S. at 94.  Under New York law, collateral estoppel applies in a later proceeding if (i) there is an identity of issue that has necessarily been determined in the prior proceeding, and

(ii) the party to be estopped had a full and fair opportunity to litigate the issue in the first proceeding. Gilberg v. Barbieri, 53 N.Y.2d 285, 291, 423 N.E.2d 807, 809 (N.Y. 1981); see Long Island Lighting Co. v. IMO Indus. Inc., 6 F.3d 876, 885 (2d Cir. 1993) ("The requirements for collateral estoppel under New York law are that the issue be identical and necessarily decided in the prior proceeding, and that the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue in the prior proceeding."); see also Bronx Household of Faith v. Bd. of Educ. of City of New York, 331 F.3d 342, 362 (2d Cir. 2003) (stating collateral estoppel bars relitigation of issues litigated in a previous action "if (a) the issues in both proceedings were identical, (b) the issue in the prior proceeding was actually litigated and actually decided, (c) there was a full and fair opportunity to litigate in the prior proceedings and (d) the issue previously litigated was necessary to support a valid and final judgment on the merits").

The party asserting collateral estoppel must establish that the identical issue was necessarily decided in the prior proceeding. See Beuchel v. Bain, 97 N.Y.2d 295, 304, 897 N.E.2d 914 (N.Y. 2001). If the movant meets its burden, the party to be estopped has the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination. See id. at 304, 897 N.E.2d at 914. In determining whether a

21

party had a full and fair opportunity to litigate the issue, New York courts consider "the various elements which make up the realities of litigation," including "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in applicable law and foreseeability of future litigation." Schwartz v. Pub. Adm'r of the County of the Bronx, 24 N.Y.2d 65, 72, 298 N.Y.S.2d 955, 961 (N.Y. 1969). "As the consequences of a determination that a party is collaterally estopped from litigating a particular issue are great, strict requirements for application of the doctrine must be satisfied to insure that a party not be precluded from obtaining at least one full hearing on his or her claim." Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 485, 386 N.E.2d 1328, 1331 (N.Y. 1979); see McKithen v. Brown, 481 F.3d 89, 105 (2d Cir. 2007) (stating that collateral estoppel only applies "if it is *quite clear* that [both] requirements have been satisfied, lest a party be precluded from obtaining at least one full hearing on his or her claim" (internal quotation marks and citation omitted)).

B. Application

The Court analyzes each prior proceeding to determine whether those dismissals are preclusive of plaintiff's claim against JMB before this Court.

22

### 1.   Northeast Litigation

JMB argues that the Board failed to assert alter-ego liability as a cross-claim or contest summary judgment on that issue in the Northeast Litigation, so that the Board is bound by Justice Lehner's determination that JMB is not the alter-ego of K&J and is precluded from relitigating that determination in this action. (Def.'s Mem. 2, 6.)  In opposition to JMB's motion, the Board argues that Justice Lehner's grant of summary judgment in favor of JMB does not preclude the Board from pursuing its alter-ego claim in this action because the Board did not assert such claim in the Northeast Litigation, nor was the issue decided against the Board in that action. (Pl.'s Mem. 14.)  In addition, the Board asserts that it did not actively litigate against JMB in the Northeast Litigation because its cross-claims against JMB for common law indemnification and contribution were rendered moot by the Board's dismissal from that action, so the Board's claims against JMB in the Northeast Litigation were never ripe. (Id. at 12-14.)  Finally, the Board denies it had a full and fair opportunity to contest whether JMB and K&J were alter-egos.[7] (Id. at 19-23.)  For the reasons stated below, the Court finds that the judgment in the Northeast Litigation does not preclude the instant action against JMB.

---

[7] The Board's argument that there is no identity of issue is nonsensical and warrants no discussion. (See Pl.'s Mem. 19 ("The Northeast Litigation provides no basis for issue preclusion on the subjects of *res judicata* or collateral estoppel because neither issue was raised in that litigation.").)

23

a.   Res judicata

Justice Lehner's grant of summary judgment in favor of JMB on the question of whether JMB is the alter-ego of K&J is plainly a judgment on the merits that can be accorded res judicata effect.  See, e.g., Strange, 59 N.Y.2d at 737, 450 N.E.2d at 235 (giving res judicata effect to claims adjudicated through summary judgment and resulting in dismissal of complaint).  However, based on principles of res judicata, judgment in the Northeast Litigation does not bar the Board's present suit.

First, the Board's present alter-ego allegations do not arise out of the same transaction as the Board's indemnification claim in the Northeast Litigation.  Specifically, the Board's instant alter-ego claim seeks to hold JMB liable for harm the Board suffered on account of K&J's breach of contract in connection with K&J's faulty supervision and construction work on the conversion project, whereas the Board's indemnification and contribution claims in the Northeast Litigation stemmed from the potential harm of being held liable for nonpayment of a subcontractor on the conversion project.  Plaintiff's claims here and in the Northeast Litigation are not duplicative, nor are they based on the same harm. See LaRocco, 43 A.D.3d at 500, 840 N.Y.S.2d at 477.

24

In addition, the Board's failure to pursue alter-ego liability against JMB in the Northeast Litigation does not bar the Board from asserting the claim in this action because where "co-defendants did not actively litigate as adversaries, there can be no res judicata effect." RX Data Corp. v. Dep't of Soc. Servs., 684 F.2d 192, 196 (2d Cir. 1982) (Newman, J.) (holding that party's claim in federal court against co-defendant in prior state court action was not barred by principles of res judicata due to lack of adversity between the parties in the state court action (citation omitted)); accord Morrison v. Blitz, No. 88 Civ. 5607, 1995 WL 679259, at *4 (S.D.N.Y. Nov. 15, 1995) ("[Res judicata] does not bar claims between parties who were co-defendants to the original suit, if they did not and were not obligated to, actively litigate as adversaries." (citing RX Data, 684 F.2d at 196)).  Although the Board asserted cautionary cross-claims for common law indemnification and contribution against JMB in the Northeast Litigation, arguably making the Board and JMB opposing parties in that action, it was not obligated to assert those claims.  Moreover, those claims were not actually litigated[8] or brought to a final conclusion, nor is it clear on what legal theory such claims were based. See Welsbach, 9 N.Y.3d at 127-28, 848 N.Y.S.2d at 551; cf. Phlo

---

[8] In addition, pursuant to N.Y. C.P.L.R. § 3011, there need not be an answer to a cross-claim unless the cross-claim contains a demand for an answer.  "If no demand is made, the cross-claim shall be deemed denied or avoided." Id.

Corp. v. Stevens, No. 00 Civ. 3619, 2001 WL 630491, at *5
(S.D.N.Y. June 7, 2001) ("As the record before this Court does
not indicate whether the cause of action was ever resolved, it
is unclear whether there has been a final adjudication on the
merits, a necessary element of any res judicata claim."
(citation omitted)), aff'd 62 F. App'x 377 (2d Cir. 2003).
Accordingly, based on principles of res judicata, the judgment
rendered in the Northeast Litigation does not bar the Board's
claim against JMB in this action.

> b.   Collateral estoppel

Yet, lack of adversity between the Board and JMB in the
Northeast Litigation would not necessarily preclude the
Northeast Litigation from having collateral estoppel effect. See
RX Data, 684 F.2d at 197-98 (citation omitted).  Defendant has
demonstrated that JMB's status as K&J's alter ego was addressed
in the prior proceeding, was necessary to the judgment in the
prior action, is identical to the current issue, and is decisive
of the present suit.  Therefore, the question is whether
plaintiff has demonstrated that it did not have a full and fair
opportunity to litigate the issue in the prior proceeding. See
Goldberg v. Colonial Metal Spinning and Stamping Co., Inc., No.
92 Civ. 3721, 1993 WL 361672, at *4 (S.D.N.Y. Sept. 14, 1993)
(Keenan, J.) ("In the absence of any showing of 'particularized
unfairness,' including lack of notice or incentive to litigate,

26

. . . there is no reason to relitigate the issue." (quoting Wickham Contracting Co. v. Bd. of Educ., 715 F.2d 21, 26 (2d Cir. 1983))).

Although the Board concedes that it did not oppose JMB's motion to dismiss, the Board claims that it did not have a full and fair opportunity to litigate the issue of JMB's alter-ego status because its insurance-appointed defense counsel had no incentive to oppose JMB's motion. (Pl.'s Mem. 20-22.)  The Board argues that there was no incentive because the Board believed it could still proceed under its cross-claims for common law indemnification and contribution (id. at 20), and its appointed counsel was foremost concerned with defending against Northeast's claims, rather than casting liability elsewhere (id. at 21).  Finally, the Board contends that new evidence uncovered during discovery in the Conversion Litigation is available in this case and weighs against application of the doctrine of issue preclusion.[9] (Id. at 23.)

The Board primarily relies on Huston v. DeLeonardis, 44 A.D.2d 110, 353 N.Y.S.2d 771 (N.Y. App. Div. 1974) to support its argument that issue preclusion would be unfair in this case. There, three personal injury suits arising out of a two-car accident were consolidated and tried before a jury. Id. at 112-

---

[9] Although plaintiff's opposition brief fails to explain when such new information was discovered, plaintiff's complaint in this action makes reference to several allegations that are based on JMB's sworn answers to interrogatories in the Conversion Litigation. (See Compl. ¶ 23.)

13, 353 N.Y.S.2d at 773-74.  The trial court accepted inconsistent jury verdicts in two out of the three actions, but dismissed the second action as futile after the jury reported it was deadlocked as to that action. Id. at 113, 353 N.Y.S.2d at 774.  The plaintiff, who was found negligent in the two actions that resulted in a jury verdict, appealed the dismissal of the second action. Id.  The Appellate Division found the conditions for application of collateral estoppel were not met, as plaintiff was not actually relitigating an issue resolved in a prior action, but rather sought "to correct errors of the trial court which permeated all three actions," including the action that was appealed. Id.  In addition, plaintiff's insurance-appointed counsel "fail[ed] to perfect an appeal from the judgments entered on the[] patently erroneous verdicts in those actions," which indicated a "division of loyalties [that] foreclosed adequate representation of [plaintiff's] interests." Id.  As such, plaintiff's appointed counsel had effectively sacrificed plaintiff's interest in his own personal injury claim in order to minimize the insurance carrier's costs in defending the claims. Id.  Therefore, the Appellate Division found application of the doctrine of collateral estoppel would unfairly deprive plaintiff of a day in court. Id. at 113-14, 353 N.Y.S.2d at 774-75.

Huston is distinguishable.  Here, the Board has not shown
it was inadequately represented in the Northeast Litigation.
There was no obvious division of loyalty on the part of its
insurance-appointed counsel.  Moreover, there is no evidence of
error in the trial court's handling of the alter-ego issue.  In
addition, Northeast's claim against the Board – and consequently
its insurance carrier – was for a nontrivial sum of over
$168,000, which undercuts the Board's argument that its counsel
lacked incentive to oppose JMB's motion to dismiss. See Conte v.
Justice, 996 F.2d 1398, 1401 (2d Cir. 1993) ("[T]he injuries
involved and the amount at stake were by no means trivial,
thereby providing the insurance company with pressing incentive
to vigorously litigate . . . .").

In fact, the Court of Appeals in Schwartz rejected the
contention that collateral estoppel should not apply where a
party is not represented by counsel of its choice, as in the
case of counsel appointed by liability insurance carriers. 24
N.Y.2d at 73, 246 N.E.2d at 730.  Although the Schwartz court
could conceive of two situations where a party's representation
by its insurance-appointed counsel could turn out to be
inadequate, such as (i) where the injuries or amount at stake
are small, or (ii) where an insurance carrier approaches
litigation intending to secure a partner with which to share
recovery costs, id. at 73, 246 N.E.2d at 730; see also Gilberg,

53 N.Y.2d at 292-94, 423 N.E.2d at 809-10 (concluding conviction for petty offense of harassment did not preclude defendant from contesting merits of subsequent civil suit for assault where defendant did not have incentive to litigate thoroughly in prior action given the "minor" significance of the petty violation, the lack of a right to a jury trial, the lack of vigor typical of the defense of such violations, and the lack of any indication that the parties anticipated the determination would be used against defendant in later litigation), those situations do not apply to the instant dispute.  Moreover, the Schwartz court noted there are ways to mitigate such dangers. Id.

The Court is also unpersuaded by the Board's contention that new evidence is presented in this case that was not available when the motion to dismiss in the Northeast Litigation was decided.  The evidence was allegedly uncovered years ago during discovery in the Conversion Litigation, and as such, should have been used to pursue JMB's alter-ego liability in that action.  It is unclear why the evidence plaintiff claims Justice Lehner did not consider in the Northeast Litigation was not put before Justice Tolub in the Conversion Litigation.  The Court is thus not persuaded that any allegedly new evidence is by itself sufficient to render collateral estoppel inappropriate in this case. Cf. Sucher v. Kutscher's Country Club, 113 A.D.2d 928, 930, 493 N.Y.S.2d 829, 832 (N.Y. App. Div. 1985) (declining

to apply collateral estoppel where party demonstrated lack of full and fair opportunity to litigate issue by presenting new evidence that, although unclear why not prepared and submitted before summary judgment in prior action, was nonetheless relevant to key issue in case and where court found counsel was understandably confused over subtleties in applicable substantive law and failed to actually litigate key issue).

Finally, given the ongoing problems with the conversion project and the fact that the Board initiated the Conversion Litigation before the Board was dismissed from the Northeast Litigation, the Board might have anticipated that the factual determination as to JMB's alter-ego status could be used against the Board in subsequent litigation. The Court nonetheless is reluctant to find that the Board had a full and fair opportunity to litigate the alter-ego issue in the Northeast Litigation. Assuming that its cross-claims were not predicated on JMB's alter-ego status, it is plausible that the Board anticipated it could bring those cross-claims in an independent, separate suit. See Tokio Marine v. Canter, 07 Civ. 5599, 2009 U.S. Dist. LEXIS 70347, at *17-18 (S.D.N.Y. Aug. 11, 2009) (Leisure, J.). Because the Board thought it could resolve those cross-claims separately and apart from the factual issue of whether JMB was K&J's alter-ego, the Court is persuaded that the Board lacked incentive to litigate JMB's status as an alter-ego in the

31

Northeast Litigation. See Ryan v. N.Y. Tel. Co., 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 827 (N.Y. 1984) (stating that when assessing whether a party had a full and fair opportunity to litigate an issue of fact or law, a court should take into account the realities of the litigation, "which . . . may have had the practical effect of discouraging or deterring a party from fully litigating the determination" (internal quotation marks and citations omitted)).  The Court therefore finds that plaintiff has demonstrated it would be unfair to give collateral estoppel effect to the judgment in the Northeast Litigation.

### 2.   Conversion Litigation

JMB further asserts that this action against it is barred by res judicata because the claim against it here arises from the same transactions that the Board challenged in the Conversion Litigation. (See Def.'s Mem. 4.)  As a result, JMB argues the dismissal of the Board's claims against JMB in the Conversion Litigation precludes the Board from now seeking to pierce the corporate veil under an alter-ego theory[10] to hold JMB

---

[10] The Court notes that "New York does not recognize an independent cause of action to pierce the corporate veil; rather 'it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners.'" Feitshans v. Kahn, No. 06 Civ. 2125, 2006 WL 2714706, at *3 (S.D.N.Y. Sept. 21, 2006) (quoting Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 1160 (N.Y. 1993)).  The doctrine "assumes that the corporation itself is liable for the obligation sought to be imposed" on the owners. Morris, 82 N.Y.2d at 141, 623 N.E.2d at 1160.  Generally, "liability . . . may be predicated either upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties." Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991) (citing Itel

liable for damages stemming from K&J's breach of contract in the conversion project. (See id. at 6-7.)

The Board argues that it may now seek a declaration that JMB is the alter-ego of K&J because the Board never sought to pierce the corporate veil in the Conversion Litigation, nor was it obligated to raise such claim in that proceeding, and Justice Tolub's order dismissing the complaint against JMB did not reach JMB's arguments that collateral estoppel barred any alter-ego allegations raised by the Board. (Pl.'s Mem. 14-18.)   Instead, Justice Tolub dismissed the complaint as to JMB based on the Board's failure to demonstrate that JMB owed the Board a duty of care. (Id. at 18.)

As discussed below, the Court finds that the Board's alter-ego allegations in this action are barred by res judicata, and this action must be dismissed.

---

Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd., 909 F.2d 698, 703 (2d Cir. 1990) ("New York law allows the corporate veil to be pierced either when there is fraud or when the corporation has been used as an alter ego."); see Morris, 82 N.Y.2d at 141, 623 N.E.2d at 1160 (stating that piercing the corporate veil requires a showing that: (1) the owner exercised complete domination over the corporation with respect to the transaction attacked, and (2) that such domination was used to commit a fraud or wrong against the plaintiff, resulting in the plaintiff's injury).   In order to determine whether a corporation is dominated, courts consider:  (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers; (6) the amount of discretion shown by the allegedly dominated corporation; (7) whether the alleged dominator deals with the corporation at arms length; (8) whether the corporations are treated as independent profit centers; (9) whether others pay or guarantee debts of the dominated corporation; and (10) intermingling of property between the alleged dominator and the corporation. See Passalacqua, 933 F.2d at 139 (citation omitted).   Although an action for piercing the corporate veil has its roots in both law and equity, because the factors that justify corporate veil piercing are so fact specific, the determination is usually made by a jury. See id. at 136-37.

### a.    Res judicata

The Board and JMB were adverse in the Conversion

Litigation.    In addition, Justice Tolub's order dismissing the

complaint against JMB in its entirety is treated as a judgment

on the merits for claim preclusion purposes. See Haughton v.

Burroughs, No. 98 Civ. 3418, 2004 WL 330242, at *5 (S.D.N.Y.

Feb. 23, 2004) (Jones, J.) ("'[I]t is well-settled that the

failure to state a proper cause of action calls for a judgment

on the merits. . . .'" (quoting People v. Casey, 95 N.Y.2d 354,

717 N.Y.S.2d 88, 95 (N.Y. 2000))); Feigen v. Advance Capital

Mgmt. Corp., 146 A.D.2d 556, 558-59, 536 N.Y.S.2d 786, 788 (N.Y.

App. Div. 1989) (finding prior dismissal of complaint alleging

breach of contract where no contractual relationship existed

between the parties was on the merits for res judicata purposes

and precluded plaintiffs from repleading claims against the

dismissed parties "notwithstanding that different theories

[were] alleged or different remedies [were] sought"); see also

Vavolizza v. Krieger, 33 N.Y.2d 351, 356, 308 N.E.2d 439, 442

(N.Y. 1974) ("An order made upon a motion provides such a

'judgment' as will bar relitigation under the doctrines of [r]es

judicata or collateral estoppel so long as the requisites [of

those doctrines] . . . are present." (citations omitted)).    The

dismissal of the complaint against JMB in the Conversion

Litigation "was not merely for a technical pleading defect, but

34

manifestly on the merits." <u>Lampert v. Ambassador Factors Corp.</u>, 266 A.D.2d 124, 124, 698 N.Y.S.2d 234, 235 (N.Y. App. Div. 1999) (citation omitted); <u>cf.</u> <u>Hodge v. Hotel Employees and Rest. Employees Union Local 100</u>, 269 A.D.2d 330, 330, 703 N.Y.S.2d 184, 185 (N.Y. App. Div. 2000) (finding dismissal plainly not on the merits where trial court stated that "plaintiff's claims may have possessed merit but that the complaint was inartfully drafted and failed as a pleading . . . ." (citation omitted)).[11]

The Board's complaint in the Conversion Litigation did not state a cause of action for corporate veil-piercing.  To the extent that the complaint raised allegations that could support veil-piercing (<u>see</u> Def.'s Ex. 9 ¶ 18; Pl.'s Ex. I ¶ 156), JMB disputed the viability of such allegations in its motion to dismiss. (<u>See</u> Def.'s Ex. 7.)  However, Justice Tolub's dismissal order did not reach JMB's argument that collateral estoppel barred the Board's alter-ego allegations, and only disposed of

---

[11] Although Justice Tolub's order dismissing the complaint was a "non-final order that affects final judgment and may, but need not, be appealed until after final judgment has been entered," <u>Hennessy v. Cement and Concrete Worker's Union Local 18A</u>, 963 F. Supp. 334, 338 (S.D.N.Y. 1997) (Koeltl, J.), this does not affect the Court's finding that Justice Tolub's decision was sufficiently final to bar the current action because "[t]he requirement of finality for purposes of res judicata does not necessarily mean a final judgment in an action." <u>Id.</u>  Nonetheless, final judgment in the Conversion Litigation was entered and affirmed on appeal, and at no time did plaintiff appeal the order finally disposing if its claims against JMB. <u>See</u> <u>Futterman v. Calce</u>, 226 A.D.2d 306, 307, 642 N.Y.S.2d 220, 221 (N.Y. App. Div. 1996) ("A defendant's appeal from the final judgment brings up for review any non-final judgment or order which necessarily affects the final judgment . . . ."(citing N.Y. C.P.L.R. § 5501(a)(1) (internal quotation marks omitted))).

the Board's negligent construction claim.  The question is thus

whether the instant alter-ego allegations arise out of the same

transaction or transactions that formed the basis of the

Conversion Litigation and should have been raised in the

Conversion Litigation, so that the Board is now precluded from

seeking a judgment in federal court declaring JMB the alter-ego

of K&J.

The Court finds that the Board is barred from bringing this

declaratory action against JMB because its alter-ego claim could

have, and should have, been brought in the prior proceeding as

it arises from the same transaction or series of transactions

that were the basis of the prior suit, and was a ground of

recovery that was available in the prior action.  See Schultz v.

Williams, 44 F.3d 48, 55 (2d Cir. 1994) ("It is well established

under . . . New York . . . law that a party to an action who had

the opportunity to raise a claim, but failed to do so, is barred

from raising that claim in a subsequent action."); see also

Sassower, 833 F. Supp. at 265 (noting res judicata "can operate

to prevent litigation of a matter that has never been decided").

The dispute in this proceeding and in the Conversion Litigation

is virtually the same:  in the absence of a contractual

relationship with JMB, whether plaintiff can hold JMB liable for

economic loss arising out of faulty construction work in the

conversion project.  In lieu of such direct liability, the Board

36

sought to establish liability under a third-party beneficiary theory in the Conversion Litigation (see Def.'s Ex. 9 ¶¶ 19, 20, 125, 127), and now, in this action, pursuant to an alter-ego theory (see Compl. ¶ 24). Accordingly, the facts necessary to sustain both causes of action arise from the same transactions or factual grouping, form a convenient trial unit, and the facts essential to the instant claim were already present in the Conversion Litigation. See Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 112 (2d Cir. 2000). (See also Pl.'s Mem. 23 (contending that new evidence uncovered during discovery in the Conversion Litigation supports the instant alter-ego allegations); Compl. ¶ 23 (stating certain allegations are based on JMB's responses to interrogatories in the Conversion Litigation).)

As such, the Board's present suit merely asserts a different legal theory to obtain relief from the same defendant for identical injuries. See Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan, 263 F.3d 196, 201 (2d Cir. 2001) ("[A] variation in the facts alleged, legal theories asserted, or relief sought in the new pleading generally will not affect the result, because separately stated causes of action may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought." (citations omitted)); Jacobson, 111 F.3d at 265; see also Rosen v. Kessler, 51 A.D.3d 761, 856

N.Y.S.2d 861 (N.Y. App. Div. 2008) ("The doctrine of res judicata precludes the instant action because, inter alia, it arises from the same transactions as a prior action . . . and, given that New York does not recognize a separate cause of action to pierce the corporate veil . . . it differs from the prior action only in the theory of recovery . . . ." (internal citations omitted)); cf. Feitshans v. Kahn, No. 06 Civ. 2125, 2006 WL 2714706, at *4 (S.D.N.Y. Sept. 21, 2006) (finding plaintiffs' claims seeking to hold new defendants responsible as alter-egos for breaches of contract by defunct corporations were barred by res judicata because plaintiffs sought "to relitigate the very same claims that ha[d] already been decided" and they were entitled to only "one recovery for a single wrong," even where different legal theories as to recovery were presented). The Board's failure to avail itself of the opportunity to pursue a cause of action in state court warrants application of res judicata to bar such claim against JMB in the present declaratory action. See EFCO, 124 F.3d at 400 (citation omitted).[12]

---

[12] This case does not present the situation where a plaintiff obtains a judgment that it cannot enforce, and subsequently discovers a new party to shift liability to under an alter-ego theory. The Board sued JMB in the prior litigation, which distinguishes this case from other situations where courts have been reluctant to preclude corporate veil-piercing claims against third parties that were not named in the prior proceedings. See, e.g., Eckhaus v. Blauner, No. 94 Civ. 5635, 1997 U.S. Dist. LEXIS 9043, at *12-13 (S.D.N.Y. June 25, 1997). In addition, plaintiff's citation to RENP Corp. v. Embassy Holding Co., 229 A.D.2d 381, 644 N.Y.S.2d 567 (N.Y. App. Div. 1996) is unpersuasive. That case is distinguishable because it involved

38

Moreover, plaintiff has not pointed to any reason why res judicata principles would be inapplicable in this case. See Jacobson, 111 F.3d at 265 (noting that where the initial forum lacks the power to award the full measure of relief sought in the prior lawsuit, or where "formal jurisdictional or statutory barriers" prevent plaintiff from presenting the entire claim to the court in one action, res judicata principles are inapplicable (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). The state court had the power to grant the relief sought here. See Brooks v. Giuliani, 84 F.3d 1454, 1463 (2d Cir. 1996). Plaintiff is thus barred from litigating its alter-ego claim in this action.

---

allegations of a fraudulent conveyance to avoid satisfaction of a judgment awarded in a prior action. The conveyance occurred after the transaction at issue in the prior action, see id. at 382, 644 N.Y.S.2d at 569, and thus the subsequent suit was not based on the same facts underlying the prior suit. In contrast, here, the facts alleged in support of the Board's alter-ego allegations were already present in the Conversion Litigation (see Compl. ¶ 24) and arose from the same factual grouping underlying the Conversion Litigation (see, e.g., id. ¶ 24 (alleging JMB used its domination and control of K&J to "procure[e] K&J's breach of its contractual obligations to the Sponsor")). In fact, the instant complaint repeats certains factual allegations that were asserted in the Conversion Litigation. (Compare Def.'s Ex. 9 ¶ 18 and Def.'s Ex. 11 ¶ 156 with Compl. ¶ 24.) Plaintiff's reliance on First Capital Asset Management, Inc. v. N.A. Partners, L.P., 300 A.D.2d 112, 114, 755 N.Y.S.2d 63, 65 (N.Y. App. Div. 2002) is similarly unpersuasive because that case states that the proof required to establish an owner's personal liability under a stock purchase agreement is different from that required to sustain a corporate veil-piercing claim against the owner in a subsequent post-judgment enforcement action. The prior claim involved interpretation of the terms of a stock purchase agreement, while the subsequent veil-piercing claim involved the owner's misrepresentations in alleged financing agreements. As such, those claims did not arise out of the same transactions, as different agreements were at issue in both actions. Here, the facts essential to this suit were already present in the Conversion Litigation, the theories of recovery center on the same transactions, as explained above, and therefore, any claim now asserted in plaintiff's complaint could have been asserted in the Conversion Litigation.

b.   Collateral Estoppel

JMB also argues that the Board is now estoped from
asserting that JMB is K&J's alter-ego because that issue was
necessarily decided by implication in the Conversion Litigation.
(See Def.'s Reply 2, 10.) See Norris v. Grosvenor Mktg. Ltd.,
803 F.2d 1281 (2d Cir. 1986) (stating that in construing effect
of decision in prior action, "[i]f by necessary implication [the
dispositive issue] is contained in that which has been
explicitly decided, it will be the basis for collateral
estoppel" (internal quotation marks and citation omitted)); see
also Lyons v. Lancer Ins. Co., No. 07 Civ. 7095, 2008 WL
4525542, at *4 (S.D.N.Y. Sept. 30, 2008) ("[I]n order to invoke
the collateral estoppel doctrine, a state court decision need
not specifically mention a particular argument or explain its
reasons for rejecting it; instead, an argument can be decided
sub silentio." (citations omitted)).

The Court finds issue preclusion inapplicable here because
JMB fails to meet its burden of demonstrating that it is "quite
clear" that the state court necessarily decided the identical
issue. McKithen, 481 F.3d at 105 (internal quotation marks and
citation omitted).  Although JMB construed the Board's complaint
as asserting facts in support of a corporate-veiling piercing
claim premised on an alter-ego theory (see Def.'s Ex. 7), after
examining the record in the Conversion Litigation, the Court

40

finds there is no evidence that the Board alleged JMB's alter-
ego status, either in its pleading or opposition papers.
Justice Tolub nowhere expressed an opinion as to whether JMB was
K&J's alter-ego, nor did he resolve any issues of fact that are
inconsistent with plaintiff's allegations in this action. (See
Def.'s Ex. 10.)   The factual issues that are critical in the
present action were not decided directly or by necessary
implication in the Conversion Litigation. (See id.)   JMB has
therefore failed to establish a crucial requirement for the
application of collateral estoppel under New York law.

**CONCLUSION**

For the reasons set forth herein, JMB's motion pursuant to
Federal Rule of Civil Procedure 12(b)(6) is GRANTED based on
principles of res judicata, and the complaint against JMB is
DISMISSED with prejudice.

**SO ORDERED.**
**New York, New York**
August 24, 2009

Peter K. Leisure

U.S.D.J.

41